## CITY OF MONTEREY v. JACKS.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 27.   Argued October 16, 1906.—Decided December 3, 1906.

In California, pueblo lands, which were simply ancillary to the execution of the public trust and in which the pueblo never had an indefeasible proprietary interest, and which were subject to the supreme political dominion of the former Mexican government, became, on the change of government, equally subject to the sovereignty of the State of California through its legislature, and the title to such lands did not pass to the United States.

The title of one holding under a deed to pueblo lands from a city in California, ratified by the legislature, sustained as against the city claiming to hold under a subsequent patent from the United States.

139 California, 542, affirmed.

THE facts are stated in the opinion.

*Mr. Hamilton Gay Howard* for plaintiff in error.

*Mr. W. I. Brobeck*, with whom *Mr. John Garber* and *Mr. Frederic D. McKenney* were on the brief, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action to quiet title brought by plaintiff in error (and, being plaintiff in the court below, we will so designate it) in the Superior Court of the county of Monterey to 1,635.03 acres of land, situate in Monterey County, State of California. Plaintiff alleged title in fee simple, and contends that such title has come to it as successor of the pueblo of Monterey of Upper California. There is no dispute that the land was part of the pueblo of Monterey, and that, after proper proceedings had in pursuance of acts of Congress, the title of the city of Monterey was confirmed by a decree of the Board of Land Commissioners and a patent issued to the city November 19, 1891.

The defendant gets his title through one D. R. Ashley, who was the attorney for the city to present and prosecute its claim to the land before the Board of Land Commissioners. To pay the indebtedness incurred for his services the land was sold under the authority of certain acts of the legislature of the State, and purchased by him. The validity of the title so derived, as against the title of the city as successor of the pueblo of Monterey, free from the control of the legislature, makes the question in the case. Judgment passed for the defendant in the trial court and was affirmed by the Supreme Court. 139 California, 542. This writ of error was then allowed.

The city of Monterey was incorporated by an act of the legislature of the State of California, March 30, 1850, and became thereby successor óf the former pueblo to its pueblo lands. In 1857 the charter of the city was amended, and by section 7 thereof the trustees were empowered to pay off the expenses of prosecuting the title of the city before the United States land commissioners and before the United States courts, and for that purpose sell and transfer any property, right or franchise upon such terms and for such price as might by them be deemed reasonable. It was found by the lower courts (and we quote from the opinion of the Supreme Court) that—

"On January 24, 1859, said Ashley presented to the trustees of the city of Monterey a claim amounting to $991.50 for services as its attorney in presenting such pueblo claim to the commissioners. The claim was approved and allowed, and, there being no funds in the treasury to pay it, the board of trustees passed a resolution directing that a sale of all the pueblo lands of the city, or so much of them as might be necessary to pay the claim of said Ashley, be made at public auction on the ninth day of February, 1859. Due notice of the time for holding said sale was given, and the same was held at the time and in accordance with the notice, at which sale the entire pueblo tract was bid in by the said D. R. Ashley and the defendant, David Jacks, for the sum of $1,002.50, being

the amount of the indebtedness and the necessary expenses of sale; no one offering to purchase less than the whole, or bid a higher amount. Thereafter said trustees made, executed and delivered a conveyance of said lands, dated February 9, 1859, but acknowledged February 12, 1859, in favor of said D. R. Ashley and the defendant, David Jacks, and in the conveyance the proceedings taken by the trustees in the matter of such sale were recited. This conveyance was recorded in the county recorder's office of the county of Monterey, on June 11, 1859. On April 2, 1866, the act to incorporate the city of Monterey was amended to read as follows: 'SEC. 2. All sales and conveyances made by the corporate authorities of said city since the eighth day of February, 1859, and which conveyances purport to have been recorded in the county recorder's office of Monterey County, purporting to convey public lands, or lands confirmed to said city of Monterey, in pursuance of the act of Congress of March 3, 1851, and entitled: An act to ascertain and settle the private land claims in the State of California, are hereby ratified and confirmed.' On September 4, 1869, Ashley conveyed all his interest in the land in controversy to the defendant."

The contentions of the parties are in part made to turn upon the kind of right the city of Monterey derived as the successor of the pueblo of Monterey, whether proprietary or in trust, and because in trust subject to the disposition of the legislature of the State. This distinction was expressed by the Supreme Court and the case determined by it, and the court supported its action by a citation of prior decisions. It was said: "There is a marked difference, however, between lands which are held by a municipality in trust for public, municipal purposes, such as pueblo lands, and lands acquired by a municipality through purchase or special grant, and held in proprietary right." Of the latter class it was said: "That it is beyond the power of the State to control its disposition without the consent of the municipality." In the other case, "the lands being simply ancillary to the execution of the public trust—lands in which

the pueblo never had an indefeasible proprietary interest—and which were subject to the supreme political dominion of the former Mexican government, became equally subject to the sovereignty of the State of California through its legislature upon the change of government."

Plaintiff attacks this conclusion, and contends that the title to the lands vested, not in the State of California as succeeding sovereign, but in the United States, and the United States, having the title, passed it by the patent of November 19, 1891, to the plaintiff. And this contention, plaintiff asserts, presents the Federal question to be decided. At one time this might have been regarded as a serious question, but it is no longer so. Whatever of legal power the State of California may exercise over its municipalities has received decisive definition in many decisions. The cases are quoted by the Supreme Court in the case at bar. Whatever power the United States may exercise, or, by refraining from exercising, yield to the State of California to exercise, has long been decisively settled. We need not review the cases. An exposition of them can be found in *United States* v. *Santa Fe,* 165 U. S. 675.

If the United States was, as contended, a paramount sovereign, and as such possessed the power to direct the trust to which pueblo lands were subject, it did not do so, but conveyed land to the " city of Monterey, its successors and assigns." In other words, the conveyance was made to a municipality of the State of California, a creature of the laws of the State and subject to the State. *Payne* v. *Treadwell,* 16 California, 220; *San Francisco* v. *Canavan,* 42 California, 541. See also *Kies* v. *Lowrey,* 199 U. S. 233. And we may observe that the United States by an act passed June 15, 1906, has designated the city of Monterey as trustee of the original grant and confirmed the land to the city as patented. 34 Stat. 267.

We do not think, however, that the Federal question presented is so far unsubstantial as to justify a dismissal of the writ of error, and the motion to dismiss is denied.

*Judgment affirmed.*