## CITY OF TRENTON *v.* STATE OF NEW JERSEY.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW
JERSEY.

No. 430. Argued March 2, 1923.—Decided May 7, 1923.

1. A State has power, and it is its duty, to control and conserve
   its water resources for the benefit of all its inhabitants. P. 185.
2. Diversion of waters from the sources of supply for this use, is
   a legitimate function of the State, which may be left to private
   enterprise subject to state regulation, or be performed directly, or
   be delegated either to bodies politic created for the purpose or to
   the State's municipalities. P. 185.
3. In the absence of state constitutional provisions safeguarding it
   to them, municipalities have no inherent right of self-government
   which is beyond the legislative control of the State, but are merely
   departments of the State, with powers and privileges such as
   the State has seen fit to grant, held and exercised subject to its
   sovereign will. P. 187.
4. The power of a State over the rights and properties of cities
   held and used for "governmental purposes," is unrestrained by
   the Contract Clause, or the Fourteenth Amendment, of the Fed-
   eral Constitution. P. 188.
5. The distinction between a municipality as an agent of the State
   for governmental purposes, and as an organization to care for
   local needs in a private or proprietary capacity, affords no
   ground for the application of those constitutional restraints against
   a State in favor of its own municipality. P. 191.
6. The City of Trenton, as successor to a grant made by New
   Jersey to a private corporation, claimed a perpetual right, un-
   burdened by license fee or other charge, to divert all the water
   that might be required for the use of the City or its inhabitants
   from the Delaware River, and resisted a charge, imposed under
   c. 252, Laws N. J., 1907, for water diverted beyond the amount
   being legally diverted when the act was passed and in excess of
   a *per capita* maximum prescribed by the act. *Held,* that the City
   could not invoke the Contract Clause or the Fourteenth Amend-
   ment, even assuming that the private corporation might have done
   so if its rights had not passed to the City, and that, in view
   of previous decisions, the City's contention to the contrary did
   not present a substantial federal question. Pp. 185, 192.

Writ of error to review 117 Atl. 158, dismissed.

ERROR to a judgment of the Supreme Court of New Jersey, affirmed by the Court of Errors and Appeals, in favor of the State, in its action to recover license fees from the City of Trenton, for water diverted from the Delaware River.

*Mr. A. V. Dawes,* with whom *Mr. Chas. E. Bird* was on the brief, for plaintiff in error.

*Mr. William Newcorn,* Assistant Attorney General, with whom *Mr. Thomas F. McCran,* Attorney General, of the State of New Jersey, was on the brief, for defendant in error.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The State of New Jersey recovered judgment against the City of Trenton for $14,310.00, in an action brought in the State Supreme Court. The judgment was affirmed by the Court of Errors and Appeals, and is here on writ of error.

The State's right to recover depends upon the validity of an act of the legislature (c. 252, Laws of 1907). The City asserts that this act offends against the contract clause of the Constitution of the United States, and that it takes property owned by the City in its private or proprietary capacity for public use without just compensation and without due process of law in violation of the Fourteenth Amendment. The act provides that:

" Every municipality, corporation or private person now diverting the waters of streams or lakes with outlets for the purpose of a public water-supply shall make annual payments on the first day of May to the State Treasurer for all such water hereafter diverted in excess of the amount now being legally diverted; *provided, however,* no payment shall be required until such legal diversion shall exceed a total amount equal to one hundred

(100) gallons daily, per capita for each inhabitant of the municipality or municipalities supplied, as shown by the census of one thousand nine hundred and five."

The City claims the right to take from the Delaware River all the water that it requires without limitation as to quantity and without license fee for any part thereof, and that such right was acquired by the President and Directors of the Trenton Water Works (hereinafter called the water company) by grant direct from the State March 24, 1852, and that the City acquired this right by purchase from the water company. Briefly, the basis of the City's claim is as follows: By an Act of February 29, 1804, the President and Directors of the Trenton Water Works were created a body politic and corporate. They and their successors and assigns were made capable of disposing of water to such as might apply for the same for such annual rent and under such restrictions as they might think proper, and they were authorized to lay and extend their water mains through the streets of the City. Certain springs constituted the company's source of supply, and by reason of increase of population ceased to be adequate. March 24, 1852, a supplement to the above mentioned act was passed, by which the company was authorized to take the water required either in whole or in part from the Delaware River. Later, March 2, 1855, an act was passed, authorizing the City to purchase the whole or a majority of the shares of the capital stock of the water company, and the City purchased all of the stock. Thereafter, an Act of March 1, 1859, required the company to convey unto " the inhabitants of the city of Trenton " all the real estate, works and property and all the corporate powers, franchises and privileges of the company, and this conveyance was duly made.

If the provision of the Act of 1907 imposing the license fee is valid as against the City, the judgment is right.

The Court of Errors and Appeals held that it was valid; that the State under its police power might impose a license fee as specified in the act, and that this does not deprive the City of any contractual or property right.

The State undoubtedly has power, and it is its duty, to control and conserve the use of its water resources for the benefit of all its inhabitants, and the Act of 1907 was passed pursuant to the policy of the State to prevent waste and to economize its water resources. Decision of the Court of Errors and Appeals in this case, 117 Atl. 158; *McCarter* v. *Hudson Water Co.,* 70 N. J. Eq. 695, 701, 702, affirmed by this Court in 209 U. S. 349, 355; *Collingswood* v. *Water-Supply Commission,* 84 N. J. L. 104, 110; *Cobb* v. *Davenport,* 32 N. J. L. 369, 378. The only way the City could acquire the right to take the water of the Delaware River was by grant from the State or by authorized purchase or condemnation from one to whom the right had been granted by the State. *State* v. *Jersey City,* 94 N. J. L. 431, 433. The power to determine the conditions upon which waters may be so diverted is a legislative function. The State may grant or withhold the privilege as it sees fit. Assuming in favor of the City, that its grantor received a perpetual right, unburdened by license fee or other charge, to divert all the water required for the use of the City and its inhabitants, does it follow that the State as against the City is bound by contract and is without power to impose a license fee as provided in the act?

The relations existing between the State and the water company were not the same as those between the State and the City. The company was organized and carried on its business for pecuniary profit. Its rights and property were privately owned and therefore safeguarded by the constitutional provisions here sought to be invoked by the City against the legislation of the State. The City is a political subdivision of the State, created as a con-

venient agency for the exercise of such of the governmental powers of the State as may be entrusted to it. The diversion of waters from the sources of supply for the use of the inhabitants of the State is a proper and legitimate function of the State. This function may be left to private enterprise, subject to regulation by the State; it may be performed directly; or it may be delegated to bodies politic created for that purpose, or to the municipalities of the State. Power to own, maintain and operate public utilities, such as waterworks, gas and electric plants, street railway systems, public markets, and the like is frequently conferred by the States upon their cities and other political subdivisions. For the purpose of carrying on such activities, they are given power to hold and manage personal and real property.

As said by this Court, speaking through Mr. Justice Moody, in *Hunter* v. *Pittsburgh,* 207 U. S. 161, 178, 179:

" The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any.law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitu-

tion, may do as it will, unrestrained by any provision of the Constitution of the United States. . . . The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

In New Jersey it has been held that within the limits prescribed by the state constitution, the legislature may delegate to municipalities such portion of political power as they may deem expedient, withholding other powers, and may withdraw any part of that which has been delegated. *Van Cleve* v. *Passaic Valley Sewerage Commissioners,* 71 N. J. L. 183, 198.

In the absence of state constitutional provisions safeguarding it to them, municipalities have no inherent right of self government which is beyond the legislative control of the State.[1] A municipality is merely a department of the State, and the State may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the State exercising and holding powers and privileges subject to the sovereign will. See *Barnes* v. *District of Columbia,* 91 U. S. 540, 544, 545.

In *Mount Pleasant* v. *Beckwith,* 100 U. S. 514, 524, 525, it was held that where a municipal corporation is legislated out of existence and its territory annexed to other corporations, the latter, unless the legislature otherwise provides, become entitled to all its property and immunities. In the opinion it is said (pp. 524, 525):

" Institutions of the kind, whether called cities, towns, or counties, are the auxiliaries of the State in the important business of municipal rule; but they cannot have the least pretension to sustain their privileges or their existence upon anything like a contract between themselves and the legislature of the State, because there is

---

[1] Cf. 1 Dillon Municipal Corporations, 5th ed., § 98, p. 154, et seq.

not and cannot be any reciprocity of stipulation between the parties, and for the further reason that their objects and duties are utterly incompatible with everything partaking of the nature of compact."

The power of the State, unrestrained by the contract clause or the Fourteenth Amendment, over the rights and property of cities held and used for " governmental purposes " cannot be questioned. In *Hunter* v. *Pittsburgh, supra,* 179, reference is made to the distinction between property owned by municipal corporations in their public and governmental capacity and that owned by them in their private or proprietary capacity, and decisions of this Court which mention that distinction are referred to.[2] In none of these cases was any power, right or property of a city or other political subdivision held to be protected by the contract clause or the Fourteenth Amendment. This Court has never held that these subdivisions may invoke such restraints upon the power of the State.[3]

In *East Hartford* v. *Hartford Bridge Co.,* 10 How. 511, 533, 534, 536, it appeared that for many years a franchise to operate a ferry over the Connecticut River belonged to the town of Hartford; that upon the incorporation of

[2] *Commissioners* v. *Lucas,* 93 U. S. 108, 115; *Meriwether* v. *Garrett,* 102 U. S. 472, 518, 530; *Essex Public Road Board* v. *Skinkle,* 140 U. S. 334, 342; *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79, 91; *Covington* v. *Kentucky,* 173 U. S. 231, 240; *Worcester* v. *Worcester Consolidated Street Ry. Co.,* 196 U. S. 539, 551; *Monterey* v. *Jacks,* 203 U. S. 360.

[3] Some state cases holding that the state legislature is not restrained by federal constitutional provisions: *St. Louis* v. *Shields,* 52 Mo. 351, 354; *Police Jury of Bossier* v. *Corporation of Shreveport,* 5 La. Ann. 661, 665; *Trustees of Schools* v. *Tatman,* 13 Ill. 27; *Board of Education* v. *Aberdeen,* 56 Miss. 518; *Darlington* v. *City of New York,* 31 N. Y. 164, 193. See contra: *Town of Milwaukee* v. *City of Milwaukee,* 12 Wis. 93, 109; *Grogan* v. *San Francisco,* 18 Cal. 590, 612, 613; *Mount Hope Cemetery* v. *Boston,* 158 Mass. 509, 519; *Spaulding* v. *Andover,* 54 N. H. 38, 56; *Ellerman* v. *McMains,* 30 La. Ann. 190.

East Hartford, the legislature granted to it one-half of the ferry during the pleasure of the General Assembly, and that subsequently, after the building of a bridge across the river, the legislature discontinued the ferry. It was held that this was not inconsistent with the contract clause of the Federal Constitution. The reasons given in the opinion (pp. 533, 534) support the contention of the State here made that the City cannot possess a contract with the State which may not be changed or regulated by state legislation.

In *Worcester* v. *Worcester Consolidated Street Ry. Co.,* 196 U. S. 539, 548, it was held that the obligation of the street railway company to the city to pave and repair streets occupied by it, based on accepted conditions of a municipal ordinance granting right of location, is not private property beyond the legislative control of the State, and that state legislation taxing the company and thereby relieving it from its obligation to the city to pave and repair such streets was not void as violating the contract clause of the Federal Constitution. In the opinion it is said (pp. 548, 549):

" The question then arising is, whether the legislature, in the exercise of its general legislative power, could abrogate the provisions of the contract between the city and the railroad company with the assent of the latter, and provide another and a different method for the paving and repairing of the streets through which the tracks of the railroad company were laid under the permit of their extended location. We have no doubt that the legislature of the Commonwealth had that power. A municipal corporation is simply a political subdivision of the State, and exists by virtue of the exercise of the power of the State through its legislative department. The legislature could at any time terminate the existence of the corporation itself, and provide other and different means for the government of the district comprised within the limits of

the former city. The city is the creature of the State."
Citing *East Hartford* v. *Hartford Bridge Co.*, 10 How. 511,
533, 534; *United States* v. *Railroad Company*, 17 Wall.
322, 329; *New Orleans* v. *Clark*, 95 U. S. 644, 654; *Com-
missioners of Laramie County* v. *Commissioners of Al-
bany County*, 92 U. S. 307; *Commissioners* v. *Lucas*,
93 U. S. 108, 114.

In *Pawhuska* v. *Pawhuska Oil & Gas Co.*, 250 U. S. 394,
399, it was held that a legislative grant to a city of the
power to regulate rates to be charged to the city and its
inhabitants by a gas company might be withdrawn by the
State from the city and conferred upon a commission, and
that thereby no question was presented under the con-
tract clause of the Federal Constitution. In the opinion,
after a statement of the issue, it is said (pp. 397, 398):

" Thus the whole controversy is as to which of two ex-
isting agencies or arms of the state government is author-
ized for the time being to exercise in the public interest
a particular power, obviously governmental, subject to
which the franchise confessedly was granted. In this no
question under the contract clause of the Constitution of
the United States is involved, but only a question of local
law, the decision of which by the Supreme Court of the
State is final. . . . In *New Orleans* v. *New Orleans
Water Works Co.*, 142 U. S. 79, where a city, relying on
the contract clause, sought a review by this court of a
judgment of a state court sustaining a statute so modify-
ing the franchise of a water works company as to require
the city to pay for water used for municipal purposes,
to which it theretofore was entitled without charge, the
writ of error was dismissed on the ground that no question
of impairment within the meaning of the contract clause
was involved." [4]

---

[4] Cf. *Williams* v. *Eggleston*, 170 U. S. 304, 310; *Mason* v. *Missouri*,
179 U. S. 328, 335.

The distinction between the municipality as an agent of the State for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations. The most numerous illustrations are found in cases involving the question of liability for negligent acts or omissions of its officers and agents. See *Harris* v. *District of Columbia,* 256 U. S. 650, and cases cited. It has been held that municipalities are not liable for such acts and omissions in the exercise of the police power, or in the performance of such municipal faculties as the erection and maintenance of a city hall and courthouse, the protection of the city's inhabitants against disease and unsanitary conditions, the care of the sick, the operation of fire departments, the inspection of steam boilers, the promotion of education and the administration of public charities. On the other hand, they have been held liable when such acts or omissions occur in the exercise of the power to build and maintain bridges, streets and highways, and waterworks, construct sewers, collect refuse and care for the dump where it is deposited.[5] Recovery is denied where the act or omission occurs in the exercise of what are deemed to be governmental powers, and is permitted if it occurs in a proprietary capacity. The basis of the distinction is difficult to state, and there

---

[5] See *Winona* v. *Botzet,* 169 Fed. 321, 332, et seq., and cases cited. See also: *Brantman* v. *Canby,* 119 Minn. 396 (recovery permitted for gas explosion where city furnished gas to inhabitants); *Pettengill* v. *Yonkers,* 116 N. Y. 558, 565 (recovery permitted for injury sustained by excavation in street to lay mains); *Watson* v. *Needham,* 161 Mass. 404, 411 (damages recovered for breach of contract by water commissioners to furnish water for plaintiff's boiler, resulting in injury to vegetables in greenhouse heated thereby); *Brown* v. *Salt Lake City,* 33 Utah, 222, 234 (city held liable for death by drowning in conduit forming a part of city water works system). These cases and others that might be cited serve in general to illustrate the course of decision.

is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations.[6] But such distinction furnishes no ground for the application of constitutional restraints here sought to be invoked by the City of Trenton against the State of New Jersey. They do not apply as against the State in favor of its own municipalities. We hold that the City cannot invoke these provisions of the Federal Constitution against the imposition of the license fee or charge for diversion of water specified in the state law here in question. In view of former opinions of this Court, no substantial federal question is presented. *Pawhuska v. Pawhuska Oil & Gas Co., supra,* and cases cited.[7]

*The writ of error is dismissed.*

1. The Equal Protection Clause of the Fourteenth Amendment cannot be invoked by a city against its State. P. 196. *Trenton v. New Jersey, ante,* 182.
2. So *held,* where it was claimed that the method adopted in c. 252, Laws of New Jersey, 1907, for fixing maximum amounts of water divertible without payment of license fees to the State, worked

---

[6] Cf. 1 Dillon Municipal Corporations, 5th ed., § 110, p. 183.

[7] See decisions per curiam: *Chicago v. Dempcy,* 250 U. S. 651; *Michigan ex rel. Groesbeck v. Detroit United Ry.,* 257 U. S. 609; *Chicago v. Chicago Railways Co., id.* 617; *Avon v. Detroit United Ry., id.* 618; *Edgewood v. Wilkinsburg & East Pittsburgh Street Ry. Co.,* 258 U. S. 604; *Sapulpa v. Oklahoma Natural Gas Co., id.* 608.