AMELIA MARIBU, Plaintiff, *v.* JOSEPH NOHOWEC and Others, Defendants.

Supreme Court, Trial Term, Nassau County, February 2, 1937.

*Patterson, Christ & Griffin* [*Percy F. Griffin* and *L. Kingsley Smith* of counsel], for the plaintiff.

*Edwards, Levy, Fishel & George* [*Leo Fishel* of counsel], for the defendants Nohowec, Dick, MacLeod, Molinari and Varnum, as trustees of the village of Mineola.

*Stoll & Lynde* [*Edwin R. Lynde* of counsel], for the defendant The Layne New York Co., Inc.

HOOLEY, J. This is the return of an order to show cause, *first,* why the award of a contract for the construction of a well and pumping equipment in the village of Mineola by the board of trustees of the incorporated village of Mineola to the Layne New York Co., Inc., should not be declared null and void, and, *second,* why the defendants, constituting the board of trustees of the incorporated village of Mineola, should not be enjoined and restrained during the pendency of this action and until the entry of final judgment herein, from taking any action intended, calculated or designed to carry into effect any contract or contracts with the Layne New York Co., Inc., for the construction of a well and pumping equipment of the village.

The action is brought pursuant to the provisions of section 51 of the General Municipal Law allegedly to prevent waste in awarding a contract. Plaintiff is a taxpayer and the defendants, except the Layne New York Co., Inc., are the mayor and the trustees of the village. The village of Mineola owns its own municipal water plant. The village is incorporated pursuant to the provisions of the Village Law of the State of New York. Pursuant to an authorization for the appropriation submitted to and carried by

the qualified voters of the village, for certain improvements, among others a proposed new well for the water plant, the board of trustees set about the making of such improvement and one of the trustees, the chairman of the water committee, at a meeting of the board, stated that he deemed it advisable to ask only for one bid, and that to be from the Layne New York Co., Inc., for the drilling and construction of the well and pump house. However, after an opinion from the corporation counsel, the board determined that specifications and plans for the new well and pump house should be mailed to the Artesian Well & Equipment Co., Sprague & Henwood, C. W. Lauman & Co., and the Layne New York Co., Inc. The four firms last mentioned constituted all of the bidders that have been submitting bids on Long Island municipal well jobs for the past six years, on which the Layne New York Co., Inc., had submitted proposals or bids. Bids were received from the four firms mentioned, as follows:

| Bidder | Bid |
| --- | --- |
| C. W. Lauman & Co., 50 Church street, New York.... | $31,700 |
| Artesian Well & Equipment Co., 30 Church street, New York........................................ | 26,200 |
| Sprague & Henwood, W. Forty-second street, New York........................................ | 22,875 |
| Layne New York Co., Inc., 92 Liberty street, New York | 28,040 |

After the opening of the bids, it was the recommendation of the water committee and the engineer that the bid for the new well be given to the Layne New York Co., Inc. The board adopted a resolution accepting the bid of Layne New York Co., Inc., and authorized the mayor to execute a contract therefor in behalf of the village.

The plaintiff contends that the awarding of the contract to the defendant the Layne New York Co., Inc., was illegal, wrongful and in bad faith, *first,* because the board of trustees failed to comply with the law in that there was no advertisement for bids containing a statement of the time and place where all bids received would be publicly opened and read, and, *second,* that there would be a waste of taxpayers' money for the reason that the board ignored and failed to consider the low bid of Sprague & Henwood.

As to the claim of illegality, plaintiff bases this contention on the requirements of section 26-a of the Public Works Law. This point will be considered later.

The court finds that the plaintiff has failed to sustain the second claim. The village of Mineola already had a well and pumping

equipment furnished by the Layne New York Co., Inc. In awarding the contract for the well and pumping equipment in question to the Layne New York Co., Inc., it presumably acted in its discretion and for the best interests of the taxpayers of the village. The court does not find, from the papers submitted, anything indicating bad faith or fraud on the part of the duly elected representatives of the village. The court finds that in the matter of the driving of these wells and the installation of the necessary pumping equipment, the parties are not all bidding on precisely the same thing. There is as much difference between them as there is between makes of automobiles.

With respect to the alleged illegality, the only question before the court is as to whether or not section 26-a of the Public Works Law applies to public works by incorporated villages. Section 26-a of the Public Works Law of the State of New York reads as follows:

" § 26-a. Opening and reading of bids for contracts for public work. Notwithstanding any inconsistent provisions of any general, special or local law, contracts for public work shall be awarded by any board, officer, agency, department or commission of the State or any political subdivision thereof or by any district contained therein only after advertisement for bids which shall contain a statement of the time and place where all bids received in pursuance of such notice will be publicly opened and read and, pursuant to such notice, all bids received shall be publicly opened and read at the time and place so specified."

The Public Works Law was a statute enacted in the year 1923. Section 26-a was added by chapter 641 of the Laws of 1934. Its provisions have mostly to do with the State Department of Public Works. By the statute it is enacted that in the organization of the department there shall continue to be the following divisions: (1) Division of canals and waterways; (2) division of highways; (3) division of public buildings; (4) division of engineering; (5) division of architecture. The obvious purpose and intent of the enactment of the Public Works Law was to put under one head various departments of the State of New York. The Public Works Law does not set forth the various laws in relation to the departments that were taken over and reference must be had to the particular laws in order to ascertain the affecting provisions, such as Canal Law, the Public Buildings Law and the Highway Law.

It is to be kept in mind that the law does not require the board of trustees of a village to award a contract to the lowest bidder

where bids are invited. (*Matter of Dovell Co., Inc.*, v. *Village of Lynbrook*, 213 App. Div. 570.) The Village Law of the State of New York is the charter which in the main defines the rights, liabilities, powers, duties, procedure and administration of the affairs of a village and its officials. There is no requirement in the Village Law nor in the General Municipal Law that a village should be required to advertise for bids for any materials, supplies or public works. The language of section 26-a is broad and sweeping in its terms and yet it is difficult to understand why if the Legislature intended to require advertisement for bids in a case such as this, it should have failed to incorporate such language into the Village Law or the General Municipal Law, and should rely merely upon this addition to the Public Works Law, a law having mainly to do with the canals, waterways, highways, engineering, public buildings and architecture of the State of New York. There is no provision in the Public Works Law for the publication and notice to bidders, no provision as to what papers the notice must be published in, nor is the length of time that the notice must be published stated.

The decision of the question before the court is dependent upon whether the words " political subdivision thereof," as used in the statute, were intended to include incorporated villages. Is it possible that the Legislature, if it had intended to make such a drastic change in the procedure to be followed by incorporated villages in the matter of letting contracts, would have placed such a requirement in a statute designed chiefly to co-ordinate various State activities into a Department of Public Works, the Superintendent of which was required to have his office at Albany, N. Y.? It would seem not. Nevertheless, the court is unable to escape the effect of the broad and all-inclusive language of section 26-a of the Public Works Law. The first phrase thereof reads as follows: " Notwithstanding any inconsistent provisions of any general, special or local law." The words " general," " special " and " local," used in the statute, are significant. The word " local," as used in the statute, would tend to suggest that section 26-a was not intended to refer merely to State works or to works such as canals, waterways, highways and public buildings, of which the State Superintendent of Public Works had jurisdiction, but that it was intended to refer to any public work anywhere in the State, even though that public work was local and not State public work in character. The next phrase in section 26-a is also worth noting. It reads: " contracts for public work shall be awarded by any board, officer, agency, department or commission of the State or

any political subdivision thereof or by any district contained therein." It would seem from this language that any public work in the State, whether under the jurisdiction of the State or in any local district or any political subdivision, was intended to be comprehended in the words of this statute, section 26-a, even though the statute itself had mainly to do with the State Department of Public Works.

Much time has been spent by the attorneys in this case in defining the words " political subdivision thereof " as used in the statute. The attorneys for the defendants argue that " political subdivision " is not intended to include cities or villages but refers rather to the State, counties therein and towns therein.

The village of Mineola is a municipal corporation. (Gen. Municipal Law, § 2.) Its board of trustees is a creation of the statute with no inherent powers. (*Matter of South Market Street,* 76 Hun, 85.) Its power to establish or extend a water works system is delegated to it by the State of New York by an act of the Legislature, sections 221, 223 and 224 of the Village Law.

The question of water supply is a matter of State-wide concern over which the Legislature has full control. (*Matter of Suffolk Co.* v. *Water Power & Control Commission,* 269 N. Y. 158; *Matter of Village of Massena* v. *St. Lawrence Water Co.,* 126 Misc. 524.) A municipality exercising its power to furnish water is acting in its legislative and governmental capacity. (*Matter of Village of Massena* v. *St. Lawrence Water Co.,* 126 Misc. 524.) In *City of Trenton* v. *State of New Jersey* (262 U. S. 182) the court said: " The city is a *political subdivision* of the State, created as a convenient agency for the exercise of such of the governmental powers of the State as may be entrusted to it. The diversion of waters from the sources of supply for the use of the inhabitants of the State is a proper and legitimate function of the State. This function may be left to private enterprise, subject to regulation by the State; it may be performed directly; or it may be delegated to bodies politic created for that purpose, or to the municipalities of the State."

It would seem that in like manner an incorporated village should be held to be a political subdivision.

The court is of the opinion that the words " political subdivision," as used in section 26-a of the Public Works Law, are not to be construed in any narrow or technical sense, in view of the sweeping character of that section, but are to be construed in the light of the purpose aimed to be accomplished, and according to the ordinary use of the words. It may well be that the Legislature of the State

of New York came to the conclusion that in enacting section 26-a it was effecting a change in the method of procedure within the State so that from that day forward no public work of any kind anywhere within the State of New York should be let except after advertisement for bids. While the court is of the opinion that by the use of more appropriate words the meaning of the legislation would have been clearer and while the court is further of the opinion that the statute as affecting cities and villages could, with greater propriety, have been made additions to the Village Law and to the General City Law, nevertheless, it is impossible to escape the conclusion that the Legislature intended by the addition of section 26-a to the Public Works Law to bring about public advertisement for bids for all public works of any character in any part of the State for any purpose. The conclusion of the court in this respect is further supported by the use of the words " political subdivision " in section 220 of article 8 of the Labor Law.

The defendants also contend that the sending of the plans and specifications to a selected list of four corporations constituted an advertisement for bids within the meaning of section 26-a if that statute applies. With that the court does not concur. It is conceded that there was no general notice of any kind posted, published or otherwise disseminated; that is, not the public notice which the statute intends.

Because of the fact that the board of trustees of the village of Mineola acted illegally in failing to comply with the statutory requirements of advertising for bids, the award of the contract was null and void and accordingly the application for the temporary injunction is granted.