IN THE MATTER OF THE APPLICATION OF THE PUBLIC SERVICE COORDINATED TRANSPORT FOR APPROVAL OF THE BOARD FOR THE TRANSFER OF MUNICIPAL CONSENTS FOR THE OPERATION OF CERTAIN BUSSES TO PLAINFIELD TRANSIT, INC., DOCKETS 6858, 6859, 6860, 6861, 6862 AND 6863, v. STATE OF NEW JERSEY, DEPARTMENT OF PUBLIC UTILITIES, BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT; CITY OF PLAINFIELD, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 22, 1953—Decided July 10, 1953.

Before Judges STEIN, PROCTOR and CONLON.

*Mr. Salvador Diana* argued the cause for appellant City of Plainfield.

*Mr. Winslow B. Ingham* argued the cause for respondent Public Service Coordinated Transport.

*Mr. James F. X. O'Brien* argued the cause for respondent Plainfield Transit, Inc.

The opinion of the court was delivered by

CONLON, J. C. C. (temporarily assigned). The matters here presented involve six separate appeals by the City of Plainfield from six decisions and orders of the Board of Public Utility Commissioners approving applications of Public Service Coordinated Transport (hereinafter referred to as Public Service) for the transfers from Public Service to Plainfield Transit, Inc. of municipal consents to operate busses on six lines designated as Routes 20, 24, 64, 18, 22 and 16. The appeals have been consolidated by order of this court. Of the six bus lines involved, only one—that

designated as No. 24—operates solely within the City of Plainfield. The other five lines, in addition to serving the City of Plainfield, afford transportation to and within surrounding municipalities under municipal consents. Involved in the bus operations under consideration was the transfer of 23 municipal consents, involving 12 municipalities. All of the transfers were approved and the City of Plainfield is the only municipality which has appealed.

At the hearing before the Utility Board the City of Plainfield offered no testimony in opposition to the proposed transfers but confined itself to the cross-examination of witnesses. After these appeals were instituted, however, it obtained an order from this court permitting it to include in the record as additional evidence a written agreement dated May 28, 1924, made between the Inhabitants of the City of Plainfield and the Public Service Transportation Company, the predecessor of Public Service Coordinated Transport. The effect of this agreement, if any, was not considered by the board in reaching its decisions but is offered by the City of Plainfield as one of its grounds of appeal. The agreement provides in effect that the bus transportation services which, by the agreement, were to replace trolley car tracks and trolley services along the routes mentioned therein, could be discontinued on any line by the Public Service but in such case, unless the trolley service was restored, the city reserved the right to revoke the consent to operate busses on all of the lines. The bus routes operated by the Public Service under the agreement are substantially all included within one or another of the six bus routes involved in this appeal. This agreement was approved by the Board of Public Utility Commissioners on June 26, 1924.

The provisions of the agreement above outlined constitute the bases of the appellant's first two grounds of appeal. It contends that the transfer of the municipal consents over its objection is tantamount to the granting of consent for the discontinuance of the bus routes in question; that by the agreement Public Service in effect contracted that it would

furnish the bus service therein provided for; that the agreement does not permit the responsibility for furnishing service to be transferred to some other operator without the approval of the city, and that, therefore, the proposed transfer of the municipal consents to Plainfield Transit, Inc. cannot become legally effective without the consent of the City of Plainfield. These contentions of the appellant are without substance.

The busses presently operated over the lines in question are not being operated by virtue of the contract between the City of Plainfield and Public Service made in 1924. They are operating by virtue of specific municipal consents which have been issued by the city to Public Service, a separate consent having been granted for each line on varying dates from February 18, 1929 to February 2, 1952. In 1924 when the contract was entered into the operation of busses was controlled by the provisions of the so-called "Kates Act," *L.* 1916, *c.* 136, *p.* 283, which provided generally that no autobus should operate unless its owner first obtained the consent of the appropriate body having control of the streets. The act also provided for the revocation by the municipality of the permission if there were a violation of the prescribed regulations, such as maintaining insurance and the like. In 1926 the statutory provisions affecting the operations of autobusses was materially altered by *L.* 1926, *c.* 144, *p.* 219. So far as concerns the present inquiry, the provisions of that enactment are still in effect (*R. S.* 48:4–1 *et seq.*), and place the entire supervisory regulations of autobus operations under the jurisdiction of the Board of Public Utility Commissions. There was retained in the municipality the primary right to consent or not to the operation, it being provided that no autobus should operate within a municipality "until the person owning or possessing the right to use the same shall obtain the consent of the board or body having the control of the public streets in the municipality for such operation and the use of any street or streets in such municipality." However, once the municipality grants its consent the power of regulation passes to the Utility

Board. The consent is inoperative until it has been approved by that board (*R. S.* 48 :2–14) and it cannot be revoked without the board's approval (*R. S.* 48 :4–7). The same act since 1926 (*R. S.* 48 :4–6) has provided that "Any such municipal consent for the operation of an autobus heretofore granted and now in effect or hereafter granted and in effect may be transferred by the holder thereof upon obtaining the approval of the board of public utility commissioners upon application to it by either the transferor or the transferee."

Just as the statute provides that a transfer of municipal consent need not have the approval of the municipality, so does it provide that a municipality has no power to revoke a consent once it has been approved by the board. *Public Service Interstate Transportation Company v. Board of Public Utility Commissioners,* 127 *N. J. L.* 29 (*Sup. Ct.* 1941). The provisions of the contract of 1924 between the City of Plainfield and Public Service do not give to the City any rights that are in contravention of the statute. The city in entering into the contract was acting exclusively in the public interest and thereby became subject to the exercise of the police power when exerted by the State in behalf of the general body politic. *State v. City of Trenton,* 97 *N. J. L.* 241 (*E. & A.* 1921), affirmed 262 *U. S.* 182, 43 *S. Ct.* 534, 67 *L. Ed.* 937 (1923). Thus, the terms of the contract of 1924 are not controlling, and the concurrence of the city is not a prerequisite to the approval of the transfer of the consents by the Board of Utility Commissioners.

The only other point raised by the appellant is that the transferee, Plainfield Transit, Inc., is not willing and able to operate the bus routes efficiently. In that respect extensive testimony was taken before the board as to the financial status of the corporation and the technical operating skill and experience of its personnel. The board came to the conclusion that the corporation had adequate financial ability to assume the operation of the routes in question, and that the incorporators were all men successful in the bus industry and of many years experience. There was ample evidence to substantiate that finding and it will not be disturbed as

being unfounded in fact or unwarranted in law. *N. J. Power & Light Co. v. Borough of Butler*, 4 *N. J. Super.* 270 (*App. Div.* 1949).

The six orders of the Board of Utility Commissioners approving the transfer of the several municipal consents are affirmed.