THE STATE OF OHIO, APPELLANT, *v.* MARTIN, APPELLEE.*

(No. 2768—Decided June 14, 1957.)

*Judgment affirmed, 168 Ohio St., 37.

470

Mr. William Saxbe, attorney general, Mr. James DeLeone and Mr. Louis H. Orkin, for appellant.

Mr. John F. Buchman, III, for appellee.

McCLINTOCK, P. J. This is an appeal on questions of law from a judgment of the Court of Common Pleas. The parties shall be referred to in this opinion as they were designated in the Municipal Court of Canton, to wit, the state of Ohio, plaintiff, and Edward H. Martin, defendant.

Two separate affidavits were filed in the Municipal Court of Canton against the defendant herein by an official of the Ohio Department of Natural Resources, Division of Water, charging the defendant with two violations of Section 1521.05, Revised Code, for the failure to file, within 30 days after the completion of two different water wells, a copy of his log relative to the drilling of such wells. The defendant filed demurrers to both affidavits, on the ground that the affidavits did not set forth facts which constitute an offense under the laws of the state of Ohio, for the reason that Section 1521.05, Revised Code, a violation of which was charged, is unconstitutional, null and void. The Municipal Court sustained the demurrers and dismissed the affidavits.

The decision of the Municipal Court was based upon two general grounds: (1) that because it applied only to persons drilling wells for hire, and not otherwise, the statute did not have uniform operation, as required by Section 26, Article II of the Ohio Constitution, and denied the defendant the equal protection of the laws, in violation of Section 2, Article I of the Ohio Constitution; and (2) that by requiring the furnishing of valuable information, without compensation, the statute deprived the well driller of property without due process of law in violation of Section 19, Article I of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States. On appeal to the Common Pleas Court, that court affirmed the judgment of the Municipal Court, adopting the opinion of the Municipal Court as its own. Defendant believes that the judgments of the Municipal Court and

the Common Pleas Court are sound and correct and should be affirmed.

Plaintiff appealed to this court from the judgment of the Common Pleas Court, and its assignments of error are as follows:

"1. The Common Pleas Court of Canton, Ohio, erred in sustaining the demurrer of the defendant to the affidavit charging him with a violation of Section 1521.05, Revised Code.

"2. The Common Pleas Court committed error in holding that the affidavit charging this defendant-appellee with a violation of Section 1521.05, Revised Code, failed to state facts which constituted an offense punishable by the laws of this state for the reason that Section 1521.05, Revised Code, was unconstitutional, null and void.

"3. The Common Pleas Court erred in holding that Section 1521.05, Revised Code, contravenes Article I, Section 19, and Article II, Section 26 of the Ohio Constitution, and the 14th Amendment to the Constitution of the United States.

"4. And all other errors of law apparent on the record and from the entry of the Common Pleas Court."

These assignments of error will be considered together.

Chapter 1521 of the Revised Code creates within the Department of Natural Resources a Division of Water consisting of an Ohio Water Resources Board and a Chief of the Division of Water. The powers of the Division of Water are defined in Section 1521.04, Revised Code, as follows:

"The Division of Water shall:

"(A) Collect, study, and interpret all available information, statistics, and data pertaining to the supply, use, conservation, and replenishment of the underground and surface waters in the state;

"(B) Be authorized to co-operate with and negotiate for the state with any agency of the United States government or agency of any other state pertaining to the water resources of the state;

"(C) Be authorized to perform stream gauging and contract with the United States government or any other agency for the gauging of any streams within the state;

"(D) Assist in an advisory capacity any properly consti-

tuted conservancy district, municipal corporation, or other government agency of the state in the planning of works for ground water recharge, or the establishment of water conservation practices, within the limits of the appropriations for such purpose;

"(E) Have authority to furnish information to all public officials, offices, and agencies of and in the state, and to farmers, well drillers, water consumers, industries, and any other persons seeking information regarding water resources;

"(F) Prescribe such rules and regulations subject to and in accordance with Sections 119.01 to 119.13, inclusive, of the Revised Code, for the drilling, operation, maintenance, and abandonment of wells as are deemed necessary by the division to prevent the contamination of the underground waters in the state. The board is not authorized to investigate the subject of transportation by water or the subject of hydroelectric power, or to co-operate or negotiate with agencies of the United States government or of any other state with respect to such subjects;

"(G) Have access to all information and statistics which any public authority within the state has available which the division deems pertinent to its duties."

Section 1521.05, Revised Code, the particular section held unconstitutional below, provides:

"Any person, firm, or corporation which for hire drills, bores, or digs a well shall keep a careful and accurate log of the drilling, boring, or digging of such well. The log shall show:

"(A) The character and depth of the formation passed through or encountered;

"(B) The depth at which water is encountered;

"(C) The static water level of the completed well;

"(D) A copy of the record of pumping tests, if any;

"(E) The construction details including lengths and sizes of casing, screening, and gravel packing.

"A copy of such log shall be furnished to the Division of Water within thirty days after the completion of such well, upon forms prescribed and prepared by the Chief of the Division of Water. Such log shall be kept on file by the division."

From a reading of the above quoted sections and related

sections it is manifest that the Legislature in the enactment of this chapter sought in some measure to control and conserve the water resources of the state of Ohio. The question initially raised by this appeal, then, is whether the state can regulate or exercise any degree of control over the use of private property to this end.

Clearly, this question must be answered in the affirmative. The conservation of natural resources is within the so-called *"police power"* of the state. Indeed, it has been held to be the duty of the state to control and conserve its natural resources for the benefit of all the inhabitants of the state. *City of Trenton* v. *State of New Jersey*, 262 U. S., 182, 67 L. Ed., 937, 43 S. Ct., 534, 29 A. L. R., 1471; *City of Syracuse* v. *Gibbs*, 283 N. Y., 275, 28 N. E. (2d), 835.

The state of Ohio currently enjoys a strong industrial and agricultural position which is based to a great extent on our high natural water table and the purity of that water. Our Legislature, in order to maintain our water, wisely enacted the statutes now held unconstitutional. One need only look to the southwestern part of this nation to find the results of water depletion.

In Ohio, the power to pass laws for the conservation of natural resources has been specifically granted by the framers of the Constitution. Thus, it is provided in Section 36, Article II of the Constitution that:

"Laws may also be passed * * * to provide for the conservation of the natural resources of the state * * *."

The question which is dispositive of this appeal, accordingly, is whether Section 1521.05, Revised Code, constitutes a reasonable exercise of the power of the General Assembly to pass laws for the conservation of the natural resources of the state.

In *City of Trenton* v. *State of New Jersey, supra* (262 U. S., 182), it is said in the first paragraph of the syllabus:

"1. A state has power, and it is its duty, to control and conserve its water resources for the benefit of all its inhabitants."

From an examination of Section 1521.05, it is apparent that well logs are designed to furnish the state information con-

cerning the extent of the underground waters of the state and the state of the water found. It is equally apparent that this information is designed to the end that serious depletions of water, either through contamination or user, may be overcome or offset. Thus subsection (F) of Section 1521.04, Revised Code, provides that the Division of Water shall:

"(F) Prescribe such rules and regulations subject to and in accordance with Sections 119.01 to 119.13, inclusive, of the Revised Code, for the drilling, operation, maintenance, and abandonment of wells as are deemed necessary by the division to prevent the contamination of the underground waters of the state. * * *"

It will be seen, then, that information gained through well logs can be the basis for the promulgation of rules and regulations for the operation, maintenance and abandonment of wells, to the end that subterranean waters of the state may be protected from contamination.

The same requirement with regard to gas or other liquid wells is to be found in Section 1505.04, Revised Code.

Provisions comparable to Section 1521.05, Revised Code, are to be found in the laws of Arizona, California and New York. California Code, Water, Section 7076, provides:

"Every person who hereafter digs, bores or drills a water well, or who deepens or reperforates any such well, shall file with the appropriate regional water pollution control board a report of completion of such well within thirty days after its construction or repair has been completed.

"The report shall be made on forms furnished by the Division of Water Resources and shall contain such information as the division may require, including, but not limited to: (a) description of exact location of the well; (b) detailed log of the well; (c) description of type of construction; (d) details of perforation; and (f) methods used for sealing-off surface or contaminated waters."

Section 521-b, New York Conservation Law, and Section 75-2107, Arizona Code, similarly require that all well drillers (in New York the statute is made applicable only to Long Island counties) file well logs on the completion of the drilling of a well.

The lower court based its decision on three main grounds. First, it was held that Section 1521.05, Revised Code, violated Section 26, Article II to the extent that this constitutional provision provides that all laws of a general nature shall have a uniform operation throughout the state. However, the constitutional provision requires only that laws be applied equally to persons in the same class or under the same circumstances. Laws need not affect all persons in the same manner or to the same extent.

Paragraph six of the headnotes in *Neuweiler* v. *Kauer, Dir.*, 62 Ohio Law Abs., 536, 107 N. E. (2d), 779, reads as follows:

"6. In order for a statute to have uniform operation throughout the state it is not necessary that it affect all persons in the same manner nor to the same extent, so long as it is effective throughout the whole state."

Secondly, the lower court reasoned, apparently, that because the section in question applies only to those who drill or dig wells for hire, it creates an arbitrary classification and is in conflict with the "equal protection clause" of the Fourteenth Amendment to the United States Constitution.

Within constitutional limits the power to exempt any class of persons from regulation for reasons not clearly arbitrary is a legislative power with which the courts are not concerned. The limitation engrafted on such legislative power by the equal protection provisions does not require identity of treatment but only that the different treatments be not so disparate, relative to the difference in classification, as to be wholly unreasonable. *Walters* v. *City of St. Louis*, 347 U. S., 231, 98 L. Ed., 660, 74 S. Ct., 505.

Examination of the legislative distinction in question reveals that it is within these constitutional safeguards.

It is entirely conceivable that the provisions for well logs are made applicable only to commercial well drillers because such report requires a certain amount of scientific or mechanical knowledge and accuracy which is lacking in logs filled out by the uninitiated and inexperienced. The fact that this classification may be disputed or that its effect may be opposed by argument does not mean that it transgresses constitutional safeguards. *Heisler* v. *Thomas Colliery Co.*, 260 U. S., 245, 67 L.

Ed., 237, 43 S. Ct., 83; *Quong Wing* v. *Kirkendall, Treas.*, 223 U. S., 59, 56 L. Ed., 350, 32 S. Ct., 192.

Certainly it cannot be said as a matter of law that the distinction drawn in Section 1521.05, Revised Code, is palpably unfounded.

The Common Pleas Court contends that Section 1521.05, Revised Code, constitutes the taking of private property without due process of law. With this contention we do not agree. It should be pointed out here that there is no showing that the information gained from logs has been appropriated by the public or used in competition with the supplier or that it is available for such purposes, and that the defendant has failed to show in any degree that the operation of Section 1521.05 results in any unreasonable or inequitable hardships.

In conclusion, from a consideration of Chapter 1521 in its entirety it becomes clear that Section 1521.05, Revised Code, was enacted to the end that timely information concerning the underground water supply of the state is constantly available and to the further end that the Ohio Water Resources Board may promulgate such rules and regulations as are necessary to prevent the pollution and depletion of the subterranean waters. It is likewise clear that Section 1521.05 was designed for, and is reasonably related to, the conservation of the state's natural resources for the public welfare and that it is violative of neither the Constitution of Ohio nor the Constitution of the United States.

From a careful consideration of the facts in this case and the law as has been heretofore cited, it is the opinion of this court that all the assignments of error are well taken and the judgment of the Municipal Court of Canton and the Court of Common Pleas of Stark County be reversed and the cause remanded to the Municipal Court for further proceedings, in accordance with this opinion.

*Judgment reversed.*

PUTNAM, J., concurs.

FESS, J., concurring. At the outset, it may be observed that the question for decision on this appeal arises from the sustain-

ing of a demurrer to an affidavit charging violation of Section 1521.05, Revised Code. We are, therefore, required to determine whether the statute is a valid constitutional enactment solely from an examination of the statute itself and the state and federal constitutional limitations. The defendant contends that the statutory requirement for filing reports does not involve any regulation of the digging of wells for hire in the interest of the public welfare, but is simply for the purpose of securing information for the Department of Natural Resources. This contention is not supported by any evidence.

Here again we are confronted with the perplexing conflict between the legislative exercise of the police power and the guaranties of individual rights by the Fourteenth Amendment, and Article I of the Ohio Constitution. It is well established that the state, in the exercise of its police power, is authorized to subject all kinds of occupations and businesses, including lawful, necessary and beneficial pursuits, to reasonable regulation for the protection of the public health, morals, safety and welfare, so long as such regulation does not arbitrarily or unreasonably interfere with the constitutional rights of the individual citizen in the pursuit of his business occupation. These rights of a citizen are subservient to the public welfare. But the means adopted in legislation pursuant to the police power must be suitable to the ends in view, they must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relationship to their purpose, and must not interfere with private rights beyond the necessities of the situation. *Froelich* v. *City of Cleveland,* 99 Ohio St., 376, 391, 124 N. E., 212; *Direct Plumbing Supply Co.* v. *City of Dayton,* 138 Ohio St., 540, 546, 38 N. E. (2d), 70, 137 A. L. R., 1058; *Frecker* v. *City of Dayton,* 153 Ohio St., 14, 90 N. E. (2d), 851.[1]

---

[1]These cases involved municipal ordinances—not statutes—and were decided by divided courts. The divided opinions display the diverse variance of individual juristic opinion with respect to the conflict between the exercise of the police power contra individual liberty. This diversity of judicial opinion may account for the adoption in 1912 of the untoward amendment to the Constitution providing that no law shall be held unconstitutional by the Supreme Court without the concurrence of at least all but one of the judges.

As so ably delineated by Judge McClintock in the majority opinion, there is a serious state-wide problem relating to the conservation of water resources, justifying the exercise of the police power specifically conferred in Section 36 of Article II of the Constitution. Therefore, our inquiry is limited to whether the means adopted in the enactment of Chapter 1521 of the Revised Code comply with the principles set forth in the preceding paragraph hereof.

Upon finding that a statute interferes with private rights beyond the necessities of the situation and is unduly oppressive upon individual citizens, it is the bounden duty of a court to declare such statute unconstitutional. On the other hand, due respect must be accorded a co-ordinate branch of government, the members of which are supposed to have as much knowledge on the subject of constitutionality as the members of the judiciary and are presumed to know and act within the fundamental law. As a consequence, ever since *Marbury* v. *Madison, Secy. of State,* 5 U. S. (1 Cranch), 137, it has been firmly established that courts must always indulge a strong presumption in favor of the constitutionality of legislation. Cf. *State, ex rel. Mack, Judge,* v. *Guckenberger, Aud.,* 139 Ohio St., 273, 39 N. E. (2d), 840, 139 A. L. R., 728; *State* v. *Parker,* 150 Ohio St., 22, 80 N. E. (2d), 490; *Wilson* v. *Kennedy,* 151 Ohio St., 485, 86 N. E. (2d), 722. Recently, the Supreme Court has declared that before a court may declare an enactment unconstitutional, it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible. *State, ex rel. Dickman, a Taxpayer,* v. *Defenbacher, Dir.,* 164 Ohio St., 142, 128 N. E. (2d), 59. Cf. *State, ex rel. Michaels,* v. *Morse,* 165 Ohio St., 599, 603, 138 N. E. (2d), 660.

In the face of such a strong presumption, it is frequently quite difficult to determine the exact line where validity ceases, and invalidity intervenes. *City of Cincinnati* v. *Steinkamp, Trustee,* 54 Ohio St., 284, 292, 43 N. E., 490 (citing instances). But it is certain that it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts are to be considered void. *Cincinnati, Wilmington & Zanesville Rd. Co.* v. *Commrs. of Clinton County,* 1 Ohio St., 77; *State, ex rel. Weinberger,* v.

*Miller,* 87 Ohio St., 12, 99 N. E., 1078, 44 L. R. A. (N. S.), 712, Ann. Cas. 1913E, 761; *City of Xenia* v. *Schmidt,* 101 Ohio St., 437, 130 N. E., 24; *State, ex rel. Michaels,* v. *Morse, supra.* Judicial interference with a legislative act can never be permitted in a doubtful case. *Lehman* v. *McBride,* 15 Ohio St., 573. In the light of these principles and in the absence of evidence tending to show that the statute in question unduly interferes with the private rights of the defendant beyond the necessities of conserving the water resources of the state, it must be presumed that the statute is a valid constitutional enactment. Cf. 10 Ohio Jurisprudence (2d), 253, Section 171.

FESS, J., of the Sixth Appellate District, sitting by designation in the Fifth Appellate District.