MARTIN R. BOYER *v.* THE DELAWARE LIQUOR COMMISSION.

(*June* 30, 1934.)

.RICHARDS, J., sitting.

*John W. Huxley, Jr.,* for Appellant.

*Horace Greeley Eastburn* and *Benjamin T. Biggs* for Appellee.

Court of General Sessions for New Castle County.

RICHARDS, J., delivering the opinion of the Court:

Before the enactment of the *Liquor Control Act* (38 *Del. Laws, c.* 18) there was no law in force in this State, authorizing the sale of alcoholic liquor, except for medicinal

or sacramental purposes. Prior to that time the Klair Law prohibited the manufacture or sale of alcoholic liquor, and the Loose Law prohibited its possession or transportation.

When it became apparent to many persons, that the repeal of the Eighteenth Amendment to the United States Constitution was certain to take place, the Legislature of 1933 proceeded to clear the way for the lawful manufacture, sale and possession of alcoholic and malt liquors in this State (see 38 *Del. Laws, c.* 11 *et seq.*). It repealed both the Klair Law and the Loose Law; Acts were passed providing for the submission to the vote of the qualified electors of Rural New Castle, Kent and Sussex Counties, on Tuesday next after the first Monday of June, 1933, the question of whether the manufacture and sale of intoxicating liquors should be licensed or prohibited within their limits, as required by *Section* 2 of *Article* 13 of the *Constitution.* Then "The Liquor Control Act" was passed in order that there might be some law for the regulation of the liquor business in the city of Wilmington when the Eighteenth Amendment was repealed, and also in Rural New Castle, Kent and Sussex Counties, in case they should vote in favor of the manufacture and sale of intoxicating liquor.

This is a very comprehensive statute, dealing with all phases of the manufacture, distribution, sale, purchase, importation, transportation and possession of alcoholic liquor, so far as its authorization in this State is concerned. It created a commission under the name of the "Delaware Liquor Commission," to consist of one person and to be appointed by the Governor on or before May fifteenth, 1933. The appointment of this commission was made within the time provided for by the Act, and it then became vested with the duty and authority of administering the Act, including the granting of licenses to sell alcoholic liquor; and it is in connection with the performance of that duty that this case is before the Court. In fact, the Commission is the only agency in this state which possesses

the authority to grant licenses to sell alcoholic liquor. Certain restrictions are placed upon this right of the Commission to grant licenses by the provisions of the Act. *Paragraph* 1 of *Section* 2 suspends its application, in those districts created by *Section* 2 of *Article* 13 of the *State Constitution,* in which a majority of the qualified electors shall vote against license. The first paragraph of *Section* 24 provides that a license shall be refused when it is to be used in any county or subdivision thereof, contrary to any prohibitory law then in force in such county or subdivision thereof. Seven reasons were assigned why the action of the Commission in refusing to grant the license in question was erroneous. These reasons can be reduced to three, and are:

That the ordinance passed by "The Mayor and Council of Middletown," is unconstitutional and in violation of *Article* 13 of the *State Constitution;*

That *paragraph* 1 of *Section* 24 of *"The Liquor Control Act,"* means only those counties, or subdivisions of a county, created by *Article* 13 of the *State Constitution,* to be local option districts, and consequently, the ordinance of "The Mayor and Council of Middletown" is not binding upon "The Delaware Liquor Commission";

That "The Mayor and Council of Middletown" had no authority to pass such an ordinance.

■ *Section* 2 of *Article* 13 of the *Constitution* provides that Sussex County shall comprise one district, Kent County shall comprise one district, the city of Wilmington as its corporate limits are or may hereafter be extended, shall comprise one district, and the remaining part of New Castle County, one district. *Section* 1 of the above mentioned article, provides for the submission by the General Assembly, to the qualified voters of all, or any one, of the districts mentioned in *Section* 2, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof. Is the ordi-

nance passed by "The Mayor and Council of Middletown" in conflict with the above mentioned sections of *Article* 13 of the *Constitution?* The ordinance simply prohibits the sale of alcoholic or spirituous liquor of a greater alcoholic content than ten per cent. by volume, for consumption on the premises. It in no way antagonizes the right of the General Assembly, to submit to the vote of the qualified electors of the districts created, the question of whether the sale of intoxicating liquor shall be licensed or prohibited therein. To hold that it did, it would be necessary to also hold, that alcoholic or spirituous liquor exceeding ten per cent. of alcohol by volume was not intoxicating. I am not willing to do that. The Constitution defines a method by which it may be ascertained, whether the sale of intoxicating liquor shall be licensed or prohibited in a certain district. It is the only method provided in this state for determining that question. The ordinance attempts to limit the alcoholic content of alcoholic or spirituous liquors which a person may be licensed to sell in the town of Middletown.

There is no doubt that the town of Middletown, is located in one of the districts created by *Article* 13 of the *Constitution,* but I cannot see that the ordinance under consideration, in any way interferes with or limits the right to submit to vote of the qualified electors of said district, the question mentioned in said article of the Constitution.

 The next reason relied upon to show that the Commission erred in refusing to issue the license applied for by Boyer is that *Paragraph* 1 of *Section* 24 of *"The Liquor Control Act,"* in using the words "any county or subdivision thereof," meant the districts created by *Section* 2 of *Article* 13 of the *State Constitution.* If this contention is correct, the only prohibitory law which would require the Commission to refuse to grant a license, would be one approved by the qualified electors of one of the districts created by *Section* 2 of *Article* 13 of the *Constitution.* With reference to

the case in question, the ordinance or law would have to be approved by the qualified electors of all of New Castle County not included within the corporate limits of the city of Wilmington.

If it were true that "The Liquor Control Act," recognized no other subdivisions of the state than those provided for in *Section* 2 of *Article* 13 of the *Constitution,* I would have to admit that the position taken on behalf of the appellant was correct. But an examination of the Act convinces one that other subdivisions of the state are recognized. *Paragraph* 1 of *Section* 2 of the *Act,* recognized the districts created by *Section* 2 of *Article* 13 of the *Constitution,* by providing that when a majority of the qualified electors of any of said districts should vote against license, its application should be suspended therein. *Section* 14 of the *Act,* in referring to stores, warehouses and branches thereof which the Commission may have, contains the following pertinent language:

"No such branch shall be established in any County outside of the City of Wilmington or in the City of Wilmington if a law prohibitory of such branch and applying to such County or City is in force, nor in any incorporated city or town whose governing body has, by ordinance, enacted that no such branch may be established therein." *Paragraph* 2.

This section not only recognizes the subdivision of counties, but also recognizes the subdivision of incorporated towns, such as Middletown. Again in *Paragraph* 4 of *Section* 33 of the *Act,* the subdivision of Municipal Corporations is recognized, where in specifying the time for closing any hotel, restaurant, club or tavern holding a license for the sale of alcoholic liquor, it is specified that such closing hour may be made earlier in any Municipality by ordinance of the Municipal Corporation. These separate and distinct references in different portions of the Act to the districts created by *Article* 13 of the *Constitution,* also to counties and municipalities, is conclusive that the language used in

*Paragraph* 1 of *Section* 24, in directing that the Commission shall refuse to grant a license to be used in any county or subdivision thereof, contrary to any prohibitory law then in force, in such county or subdivision thereof, was not intended to apply solely to the districts created by *Article* 13 of the *Constitution*.

The last reason to be considered in determining whether the Commission erred in refusing the license is whether "The Mayor and Council of Middletown," had authority under its charter, to pass an ordinance limiting the alcoholic content of spirituous liquor to be sold on the premises within its corporate limits. The Act of the Legislature incorporating "The Mayor and Council of Middletown," is found in *Volume* 33 of the *Laws of Delaware* at *Chapter* 128. This act confers upon the Mayor and Council the same general rights, powers and privileges that are usually granted to Municipal Corporations by the Legislature of this State. Those which have an important bearing on this case are found in *Section* 3. One under the title of police regulations, being "To make and enforce within said Town such fire, police and other regulations as may be deemed expedient to protect persons and property, maintain the public peace, prevent crimes and promote the public morals." One under the title of sanitary regulations, being, "To make and enforce sanitary regulations; to define, abate and remove nuisances injurious to the public health or dangerous to the inhabitants of said Town; and to prevent the introduction of infectious or contagious diseases, for which said purpose its jurisdiction shall extend to any point within one mile beyond the limits of said Town." And one found in the last paragraph of said *Section* 3, being:

"To exercise all municipal powers necessary to the proper administration of the municipal government, and for the well-being of the inhabitants of said Town, whether said powers be expressly enumerated herein or not."

It is contended on behalf of "The Mayor and Council

of Middletown," that under the general powers bestowed upon it by the provisions of its charter above quoted, it possessed the right to adopt the ordinance in question limiting the alcoholic content of spirituous liquor to be sold on the premises to ten per cent.

The principle is well recognized that a municipal corporation is a legal creation owing its existence to the Legislature. In *Volume* 43 of *Corpus Juris*, at *page* 68, § 3, is found the very clear general comment:

"A municipal corporation is a legal entity or institution, a body corporate and politic, created by the Legislature. It is a creature of the State, a creature of the law, a creature of the Legislature, a creature of the statute. Each municipality is a separate entity. It must be, borne in mind that the modern municipality is not the medieval corporation, called a "franchise," and given to a favored few to promote commerce and guarantee liberty and exemption from royal burdens, but a public institution for self-government and improvement and local administration of the affairs of State." .

It follows from the above statement, that the power of a municipal corporation is limited as is expressly conferred upon it by the Legislature, or is necessarily or fairly implied as incident thereto or essential for the accomplishment of the purposes expressly declared.

*The State of Maryland v. B. & O. R. Co.,* 3 *How.* 534, 11 *L. Ed.* 714; *Hunter v. Pittsburgh,* 207 *U. S.* 161, 28 *S. Ct.* 40, 52 *L. Ed.* 151; *City of Trenton v. State of New Jersey,* 262 *U. S.* 182, 43 *S. Ct.* 534, 67 *L. Ed.* 937, 29 *A. L. R.* 1471; *City of Chicago v. M. & M. Hotel Co.,* 248 *Ill.* 264, 93 *N. E.* 753; *Green County v. Shortell,* 116 *Ky.* 108, 75 *S. W.* 251; *Commonwealth v. Plaisted,* 148 *Mass.* 375, 19 *N. E.* 224, 2 *L. R. A.* 142, 12 *Am. St. Rep.* 566; *Schigley v. City of Waseca,* 106 *Minn.* 94, 118 *N. W.* 259, 19 *L. R. A.* (*N. S.*) 689, 16 *Ann. Cas.* 169; *Whiting v. Town of West Point,* 88 *Va.* 905, 14 *S. E.* 698, 15 *L. R. A.* 860, 29 *Am. St. Rep.* 750; *Coyle v. McIntire,* 7 *Houst.* (12 *Del.*) 44, 30 *A.* 728, 40 *Am. St. Rep.* 109; *State v. Luce,* 9 *Houst.* (14 *Del.*) 396, 32 *A.* 1076; *Gray v. Wilmington,* 2 *Marv.* (16

*Del.*) 257, 43 *A.* 94; *Cutrona v. Wilmington,* 14 *Del. Ch.* 208, 124 *A.* 658.

The above authorities clearly show that all powers exercised by municipal corporations are derived from the State; consequently whatever police powers they possess are delegated to them by the State. Being governmental agencies it is necessary for them to have such powers as will enable them to perform their governmental functions. There is no doubt that it is generally recognized, that the police powers of municipal corporations are very broad, yet it is also recognized that there are limitations upon them. It is impossible to set up certain standards, by which the validity of an ordinance claimed to have. been passed under the police powers, can be tested. Generally speaking, it especially applies to all · those things which affect the peace, security, health, morals and general welfare of the community.

*Chicago, B. & Q. R. Co. v. Illinois,* 200 *U. S.* 561, 26 *S. Ct.* 341, 50 *L. Ed.* 596, 4 *Ann. Cas.* 1175; *Spear v. Ward,* 199 *Ala.* 105, 74 *So.* 27; *Spencer Sterla Co. v. Memphis,* 155 *Tenn.* 70, 290 *S. W.* 608; *Commonwealth v. Alger,* 7 *Cush.* (*Mass.*) 53; *H. Krumgold & Sons v. Jersey City,* 102 *N. J. Law* 170, 130 *A.* 635;*Consumers' Co.v.Chicago,* 313 *Ill.* 408, 145 *N. E.* 114; *Van Winkle v. State,* 4 *Boyce* (27 *Del.*) 578, 91 *A.* 385, *Ann. Cas.* 1916 *D,* 104; *Wilmington v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512; *Gray v. Wilmington,* 2 *Marv.* (16 *Del.*) 257, 43 *A.* 94.

In the case of *Gray v. Wilmington,* above cited, it was held that a provision of the City Charter authorizing the City Council to provide against the adulteration of milk or cream sold in the city, and for its inspection, does not include the right to demand a license as incident thereto.

There is no doubt that the Legislature can by express grant, confer upon municipal corporations, the right to

adopt ordinances similar to the one now under considera-
tion.

■ That the right to limit the alcoholic content of
alcoholic or spirituous liquors to be sold and consumed on
the same premises with beer, ale or wine; or to be sold
for consumption on the premises alone, to ten per cent. of
alcohol by volume, is not expressly granted to "The Mayor
and Council of Middletown" by its charter, is not denied.
Whether it is a necessary incident to the rights which are
granted, as herein above enumerated, is a question concern-
ing which Courts might very properly differ. After
thoughtful consideration I have arrived at the conclusion
that I am not called upon to determine that question. My
reason for taking this position is based on the well known
principle, that where there is a general law, or an estab-
lished policy by the State, municipal regulation must not
directly or indirectly be repugnant to such general law or
policy. In applying this principle to the case before the
court, attention should at first be given to the fact that
*Article* 13 of the *Constitution* provides a method by which
the qualified electors of certain districts thereby created,
may determine by vote whether the manufacture and sale
of intoxicating liquors shall be licensed therein. No limit is
placed upon the alcoholic content of the intoxicating liquors
to be manufactured and sold if the result of the vote should
be favorable. All of New Castle County outside of the cor-
porate limits of the city of Wilmington was one of the dis-
tricts created by said section. This district includes the
town of Middletown.

The question of whether the manufacture and sale of
intoxicating liquors should be licensed in said district was
submitted to the vote of the qualified electors of said district
on June 2, 1934, when a majority of said electors voted in
favor of licensing such manufacture and sale. At the time
said question was so submitted to and passed upon by said

electors no limit was placed upon the alcoholic content of the intoxicating liquors to be manufactured and sold. By this vote the people of the district expressed themselves as being in favor of the manufacture and sale of intoxicating liquor therein, without limit upon its alcoholic content. Can "The Mayor and Council of Middletown," notwithstanding this vote had in pursuance of the constitutional provision, limit by ordinance the alcoholic content of intoxicating liquor to be sold in a part of said district? *Article* 13 of the *Constitution* further specifies in *Section* 3, "The General Assembly shall provide necessary laws to carry out and enforce the provisions of this Article, enact laws governing the manufacture and sale of intoxicating liquors under the limitation of this Article, and provide such penalties as may be necessary to enforce the same." On this authority the General Assembly passed "The Liquor Control Act," which was approved on May 15, 1933, prior to the vote taken in the district in which Middletown is located, and prior to the adoption of the ordinance under consideration in this case, by "The Mayor and Council of Middletown." As already stated this act deals with the subject very fully. The title reads, "An Act creating a Commission for the Control of the Manufacture, Distribution, Sale and Transportation of Alcoholic Liquor, Wines and Beer." Under *Section* 2 it is made to apply to the whole State, suspending its application in any district created under *Article* 13 of the *Constitution,* in which a majority of the qualified electors have voted against the licensing of the manufacture and sale of intoxicating liquor. *Section* 3 of the *Act,* is confined to interpreting the meaning to be given words therein; including such words as, alcohol, denatured alcohol, spirits, wine, beer, hotel, restaurant, tavern, sell, sale, license, and many other words necessarily used in connection with the control of the manufacture, sale, distribution and transportation of alcoholic liquors.

■ *Paragraph* 20 of this section defines the word sell in the following language, "Solicit or receive an order for; keep or expose for sale; deliver for value or in any other way than purely gratuitously; peddle; keep with intent to sell; keep or transport in contravention of any Section or provision of this Act; traffic in; or for any valuable consideration, promised or obtained, directly or indirectly, or under any pretext or by any means whatsoever, procure or allow to be procured for any other 'person.'" *Paragraph* 30 of this section declared the word "license" to mean, "Any license or permit to manufacture, to sell, to purchase, to transport, to import or to possess 'alcoholic liquor' authorized or issued by the Commission under the provisions of this Act." *Section* 4 of the *Act* created a commission consisting of one member to be known as the "Delaware Liquor Commission." In outlining its authority and the scope of its duties, *Paragraph* 2 of this section uses these words, "at such time or times as the manufacture and sale of 'alcoholic liquor' shall be permitted in New Castle County outside of the City of Wilmington, such manufacture and sale shall be regulated under the provisions of this Act and by the Commission herein created." This includes the district in which Middletown is located. *Section* 5 defines the functions, duties and powers of the Commission, among other things, to be:

"(5) To control the 'manufacture,' 'possession,' 'sale' and 'delivery' of 'alcoholic liquors' in accordance with the provisions of this Act; and to control the purchase, possession, transportation and 'sale' of 'alcoholic liquors' by those licensed to 'manufacture' or to 'sell;'

"(6) To grant, to refuse, or to cancel licenses for the 'manufacture' or 'sale' of 'alcoholic liquor' or other licenses in regard thereto, and to transfer any license granted."

*Section* 33 fixes the hours during which alcoholic liquors may be sold in hotels, restaurants, clubs and taverns to which licenses have been granted. But in no place does the act limit, or is the Commission authorized to limit, the

alcoholic content of the alcoholic liquors to be sold under licenses authorized to be granted. I have not overlooked *Section* 24 of the *Act*, which provides that the Commission shall refuse to grant a license to be used in any county or sub-division thereof, contrary to any prohibitory law then in force in such county or sub-division thereof. But this section is not controlling in the case under consideration, because the ordinance relied upon by the appellee does not prohibit the sale of alcoholic liquor, but attempts to regulate the alcoholic content of the alcoholic liquor licensed by the Commission to be sold.

 "The Liquor Control Act" passed by the General Assembly of 1933, was intended to control the manufacture, distribution, sale and transportation of alcoholic liquor, wines and beer, in those districts created by *Article* 13 of the *Constitution,* in which a majority of the qualified electors voted in favor of the manufacture and sale of intoxicating liquor. It conferred upon the "Delaware Liquor Commission" the exclusive right to grant licenses to sell alcoholic liquors, without limit as to the alcoholic content thereof. That is the only kind of a license the Commission has authority to grant.

It is a general law applicable to the whole State, and, therefore, the ordinance adopted by "The Mayor and Council of Middletown," limiting the alcoholic content of alcoholic or spirituous liquor sold for consumption on the premises, or sold on the same premises where beer, ale or wine is sold for consumption, to ten per cent., of alcohol by volume, is antagonistic thereto, and, consequently, void and of no effect. *Thomas v. Richmond,* 12 *Wall.* 349, 20 *L. Ed.* 453; *Ward v. Markstein,* 196 *Ala.* 209, 72 *So.* 41; *Peay v. Pulaski County,* 103 *Ark.* 601, 148 *S. W.* 491; *City of Marengo v. Rowland,* 263 *Ill.* 531, 105 *N. E.* 285; *Town of Randolph v. Gee,* 199 *Iowa* 181, 201 *N. W.* 567; *Simrall v. City of Covington,* 90 *Ky.* 444, 14 *S. W.* 369, 9 *L. R. A.*

556, 29 *Am. St. Rep.* 398; *State v. Burns,* 45 *La. Ann.* 34, 11 *So.* 878; *People v. Armstrong,* 73 *Mich.* 288, 41 *N. W.* 275, 2 *L. R. A.* 721, 16 *Am. St. Rep.* 578; *Taft v. Shaw,* 284 *Mo.* 531, 225 *S. W.* 457; *Thompson v. Mt. Vernon,* 11 *Ohio St.* 688; *Canton v. Nist,* 9 *Ohio St.* 439; *Farmer v. Nashville,* 127 *Tenn.* 509, 156 *S. W.* 189, 45 *L. R. A.* (*N. S.*) 240; *State v. Charlestown,* 92 *W. Va.* 611, 115 *S. E.* 576; *Hickman v. Wellauer,* 169 *Wis.* 18, 171 *N. W.* 635; *Mills v. Sweeney,* 219 *N. Y.* 213, 114 *N. E.* 65; *Mayor, etc., of the City of New York v. Nichols,* 4 *Hill* (*N. Y.*) 209; *Levering v. Williams,* 134 *Md.* 48, 106 *A.* 176, 4 *A. L. R.* 374.

The application of Martin R. Boyer is hereby remanded to the "Delaware Liquor Commission" for further consideration.