**SEVERSKY, INC., a corporation of the State of Delaware, Plaintiff Below, Appellant,**

**v.**

**DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION, an agency of the State of Delaware, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 25, 1974.

Decided April 24, 1975.

Roy S. Shiels, of Brown, Shiels & Barros, Dover, for plaintiff below, appellant.

John O'Brien, Deputy Atty. Gen., Wilmington, for defendant below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

In this appeal the issue is whether local option against the sale of alcoholic beverages may be constitutionally exercised through a town ordinance. We conclude that it may not be.

I

The Delaware Alcoholic Beverage Control Commission denied plaintiff an off-premise license to sell alcoholic beverages in the Town of Fenwick Island. The only basis for denial was a local ordinance which provides:

"SECTION 1: It shall be unlawful for any person or persons to own or operate an establishment for the purpose of selling alcoholic liquors to be consumed on the premises thereafter in the corporate limits of the Town of Fenwick Island, Delaware.

SECTION 2: It shall be unlawful for any person or persons to own or operate an establishment for the purpose of selling alcoholic liquors to be consumed off the premises thereafter in the corporate limits of the Town of Fenwick Island, Delaware.

SECTION 3: It shall be unlawful for any person or persons to own or operate an establishment for the purpose of selling alcoholic liquors to be consumed on the premises and off the premises thereafter in the corporate limits of the Town of Fenwick Island, Delaware.

SECTION 4: Any person or persons convicted of violating any of the provisions of this Ordinance shall be sentenced to pay a fine not to exceed $1,000.00 or to imprisonment of not more than thirty days or both.

SECTION 5: This Ordinance shall become effective from and after Monday, March 8, 1954."

The Superior Court affirmed and this appeal followed.

II

We first turn to the Delaware Constitution, Del.C.Ann. Article 13 provides:

"Section 1. The General Assembly may from time to time provide by law for the submission to the vote of the qualified electors of the several districts of the State, or any of them, mentioned in Section 2 of this Article, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof; and in every district in which there is a majority against license, no person, firm or corporation shall thereafter manufacture or sell spirituous, vinous or malt liquors, except for medicinal or sacramental purposes, within said district, until at a subsequent submission of such question a majority of votes shall be cast in said district for license. Whenever a majority of all the members elected to each House of the General Assembly by the qualified electors in any district named in Section 2 of this Article shall request the submission of the question of license or no license to a vote of the qualified electors in said district, the General Assembly shall provide for the submission of such question to the qualified electors

in such district at the next general election thereafter.

Section 2. Under the provisions of this Article, Sussex County shall comprise one district, Kent County one district, the City of Wilmington, as its corporate limits now are or may herafter be extended, one district, and the remaining part of New Castle County one district.

Section 3. The General Assembly shall provide necessary laws to carry out and enforce the provisions of this Article, enact laws governing the manufacture and sale of intoxicating liquors under the limitation of this Article, and provide such penalties as may be necessary to enforce the same."

The Commission denied the application for license on the basis of 4 Del.C. § 543(a), which states:

"The Commission shall refuse to grant a license to be used in any county or sub-division thereof, if contrary to any prohibitory law then in force, in such county or sub-division thereof."

The rationale of the Superior Court in affirming the Board's order was simply that the Constitution does not "expressly or impliedly exclude the possibility that . . . prohibition may be accomplished in other lawful ways," that is, in ways other than that provided in Article 13.

### III

In our view the proper interpretation of the Constitutional provisions was stated by Judge Rodney in Lord v. Delaware Liquor Commission, Del.Super., 2 Terry 154, 17 A.2d 230 (1940). There he considered an appeal from a Commission order denying a license which would be operated in the Town of Bridgeville. One of the arguments made in support of the Commission's ruling was that it reflected the view of many of the citizens of the Town. In reversing the Commission's order, Judge Rodney rejected that argument, saying:

"The fact that a large number, and perhaps as claimed a majority of the citizens of Bridgeville would, if permitted, vote against the licensed sale of liquor, must be briefly considered. In considering this contention I must ascertain just how much weight I can give to these views, having regard to the constitutional provisions and the legal rights accruing from the Constitution and statute. The Constitution, Article 13, Sec. 2, has divided the State of Delaware into local option districts, and of these Sussex County constitutes one. The Legislature acting on its own initiative, or on the request of a majority of the members of each House from any local option district, may submit the question of license or no license to such local option district. The local option district here material, however, would be Sussex County and not the municipality of Bridgeville, lying within the county. It is common knowledge that some time prior to the adoption of the 18th Amendment to the Federal Constitution, Sussex County had voted 'dry' and the legal sale of liquor in that county was prohibited; then came National and State prohibition. After the repeal of the 18th Amendment another election was held in Sussex County, resulting in a clear majority in favor of license. In 1933 the present Liquor Control Act was passed. The plain intendment of this act is that in the absence of negative vote in a constitutional local option district that the sale of liquor is anticipated and that everyone has a reasonable right to buy liquor from a legal source, and if this right is to be circumscribed and no legal source allowed to be available in a county, it must be for some strong and compelling reason. The people of a district can decree that no liquor shall legally be sold therein, but that district would be Sussex County and not the Town of Bridgeville, and no municipality, of and in itself, constitutes a

local option district. Consequently the individual opinions of citizens of Bridgeville, or even the collective opinion of a small portion of Sussex County, can not be accepted as an expression of views under the local option provisions."

Clearly, the Court thought that Article 13 provides the exclusive way in which local option may be exercised, and a review of the Constitutional Debates supports that conclusion.* Vol. 3, p. 2281–2377.

The Article was the subject of long, conscientious (and often eloquent) debate which centered principally on the temperance issue. The debates reveal that a priority consideration of all delegates was that the issue be decided by the people through popular referendum, and not legislative fiat. Four proposed versions of the Article were submitted to the Convention and as Edward G. Bradford said:

" . . . All of these propositions recognize the Constitutional authority of the General Assembly to submit the question to the people in order to ascertain the sense of the people upon the question as to whether there shall be license or no license." (Debates at 2290.)

The decision to incorporate the local option provision into the Constitution was a deliberate one and the delegates were aware that in most states this was controlled by statute. (Debates at 231.) One reason for this was to avoid, as far as possible, the injection of political considerations into the temperance issue. David S. Clark recalled the political vagaries that had fashioned the fate of prior temperance legislation in the General Assembly and then emphasized:

" . . . If we put it in there [in the Constitution], as, in my judgment, I think we have a right to put it there, then when the time comes, we can vote on it and thus eliminate it from politics.

That is what we want. We want this question taken out of politics. I have had men of the Democratic Party, since I have been a Member of this Convention, come to me and say, 'By all means, if you possibly can, secure this in your Constitution. We want it eliminated from politics. We want it so that Prohibitionists and Republicans and Democrats, all alike, can vote on this question.'" (Debates at 2303.)

■ Another reason the delegates had for giving Constitutional stature to the provision was to circumvent the holding in Rice v. Foster, Del.Ct.Err. & App., 4 Har. 479 (1847). There the High Court had struck down a statute which provided for local option by popular vote on a county-wide basis. The statute, which was quite similar to Article 13, was held repugnant to the State Constitution as an unauthorized delegation of legislative power to the electorate. (See Debates at 2289, 2299.) Thus, the intent of the Convention that local option be decided only by popular referendum appears with unmistakable clarity.

It is also evident that the delegates expressly rejected the proposal that local option districts be smaller than those described in Section 2 as approved. A minority proposal recommended such smaller districts, to which Mr. Bradford ("I am not by any means a total abstainer.") responded:

"As I understand the proposition of the minority of the Committee, I do not approve of it, because that proposition provides that the General Assembly may submit the question to the vote of the qualified electors of the several counties, hundreds, districts or other territorial divisions of the State. What other territorial divisions of the State may mean, I do not know. It may mean a square foot, or an acre, or a square mile. I do not know what other territorial division of the State may refer to. It may refer

* Article 13, § 1 and § 2 remain in the form adopted by the 1897 Convention.

to school districts; it may refer to voting districts.

I am not in favor of any Local Option law which shall take effect in a very small territory. I am not in favor of any Local Option law taking effect in even a hundred. The smallest district, it seems to me, should be a county, save in the case of New Castle County, and there I should divide that county into two districts; first, the City of Wilmington, as one district; and secondly, rural New Castle County as another district." (Debates at 2291.)

Robert G. Harman (a "total abstainer" by self-description) concurred:

" . . . The proposition as contained in that report as regards the question being submitted to those small districts, is farcical. I do not believe it was put there intentionally. I believe it was put there without thought, and without going into the consideration of what would constitute territorial division of the State. The mere fact of drawing the line into districts is too much for me. I never could vote for it. If such a thing existed, all a man would have to do would be to walk a few feet from where he lived, or not more than a mile at the outside, and get all he wanted.

I favor the division that is proposed in the substitute, that is, to divide the State into four districts, i. e., the City of Wilmington as one, rural New Castle County as two, Kent County as three, and Sussex County as four." (Debates at 2301.)

The vote *for* the version of Article 13 now before us was thus a vote *against* the "smaller district" theory contained in the minority proposal.

The parties have called our attention to Boyer v. Delaware Liquor Commission, Del.Gen.Sess., 6 W.W.Harr. 224, 173 A. 522 (1934) but we do not find it helpful.

The Court there held invalid a Middletown ordinance limiting the alcoholic content of beverages sold for consumption on the premises; the basis, of course, was that regulation of sales was vested in the Commission by the Liquor Control Act and the Middletown ordinance was antagonistic to the statute. To the extent that *Boyer* can be read as inconsistent with our decision today, it is hereby overruled.

IV

In sum, it is manifest that the drafters of Article 13 intended that local option be exercised *only* by popular vote in each of the Counties and the City of Wilmington. Were it otherwise, the Constitutional provision could be easily circumvented and frustrated by the action of smaller districts so as to render it all but meaningless. Any other view would permit a checkerboard pattern of "wet" and "dry" towns and districts, a situation antagonistic to the very purpose of the Article. As Mr. Bradford said:

"I am in favor of large districts because if Local Option is to have any effect at all, you must have the districts reasonably large. If the districts are so small that a man can step across the boundary and obtain all the liquor he desires, then you might just as well have no Local Option at all." (Debates at 2291.)

 We find Fenwick Island Ordinance No. 6 in conflict with Article 13 of the Delaware Constitution and therefore unconstitutional. It was error, therefore, to base denial of plaintiff's license application on 4 Del.C. § 543(a). That section can support a denial only when the prohibitory law is the result of an Article 13 mandate.

\*　.　\*　　\*　　\*　　\*　　\*

Reversed and remanded for further proceedings not inconsistent herewith.