**STATE of Delaware, Plaintiff,**

**v.**

**Erwin E. PUTMAN, Patrick M. Palumbo and Denis Alexatos, Defendants.**

Superior Court of Delaware, Sussex County.

Submitted: June 14, 1988.
Decided: Aug. 1, 1988.

---

M. Jane Brady, Dept. of Justice, Georgetown, for the State.

Karl Haller, Office of the Public Defender, Georgetown, for defendants.

## OPINION

CHANDLER, Judge.

These cases involve the prosecution of the three named defendants for violation of South Bethany Ordinance 3–85 § 4, requiring certain property owners in the town to have revetment ("rip-rapping") installed on their property. The defendants have challenged the validity of the ordinance on various grounds.

## I. BACKGROUND

The challenged ordinance provides as follows:

"SECTION 4 *Rip-rapping Requirements and Specifications.* All real property east of Ocean Drive shall be required to be rip-rapped and maintained in accordance with the conditions and specifications set forth in this ordinance, hereafter referred to as 'the property required to be rip-rapped.' The rip-rap required by this ordinance shall meet the minimum specifications set forth in "Schedule A" attached hereto, referred to as the minimum rip-rapping specifications."

The "real property east of Ocean Drive" refers to the ocean-front property in South Bethany, extending from the Atlantic Ocean on the eastern border of the parcels to the right-of-way of Ocean Drive on the west. With respect to the defendants, this property consists of "private beach" within the meaning of the Beach Preservation Act, which defines public beach as "any beach owned in fee simple by the federal or state government or any city, town, or municipality or any beach for which the State has obtained an easement or agreement for public use" and which defines private beach as "any beach ... not a public beach." 7 *Del.C.* § 6802(9), (10). The State agrees that the site proposed by the ordinance for the revetment is "on the private property of each lot owner and neither the town nor the public has any right in it, on it or over it."

The "minimum specifications" attached to the ordinance are not absolutely clear, but it is apparent that what the owners are required to do is build a revetment or retaining wall of large stones filled with smaller stones several feet high and several feet wide from the northern to southern borders of each parcel, toward the western or Ocean Drive side of each parcel. The purpose of the ordinance is to keep the beach from eroding and migrating westward, thereby preserving Ocean Drive, a public street, and the public utilities located beneath it. Section 2 of Ordinance 3–85 provides:

"*Purpose.* It is declared that substantial erosion and other damage have occurred to the beach contiguous to Ocean Drive and as a result thereof large sections of the road have been washed away exposing the county sewer main and laterals which are under the road bed; that the aforesaid damage to Ocean Drive prevents proper maintenance of the road and prevents proper protection to the county sewer main and laterals. Therefore, it is declared to be the public policy of the Town to protect and preserve the public road (Ocean Drive) and protect and preserve the integrity of the county sewer main and laterals by reducing the impact of erosion and other damages by

placing rip-rap along the beach east of Ocean Drive as expeditiously as possible."

Property owners must bear the cost of construction and maintenance of the revetment themselves. Counsel for the State at oral argument suggested that the cost of construction for each of the ocean front parcels affected by the statute will be approximately Ten Thousand Dollars ($10,-000). (The ocean front lots in South Bethany are approximately one hundred and thirty feet (130') from east to west and fifty feet (50') from north to south, according to the specifications attached to ordinance 3–85). There is a financial penalty associated with failure to comply with the ordinance. Section 7 provides:

> "*Penalty.* For any violation of the provisions of this ordinance, the owner or agent of the owner of a building or premises where such violation has been committed or shall exist upon conviction thereof shall be guilty of a violation of this ordinance and shall be punished by a fine not exceeding One Hundred Dollars ($100.00) and the costs of prosecution. Each day any violation of any provision of this ordinance occurred or continues to exist shall constitute a separate violation and shall be subject to a separate fine as above provided and the costs of prosecution."

All property owners affected by the ordinance were required to have the revetment in place by February 9, 1986.

I turn now to the defendants' various arguments that the ordinance is invalid.

## II. PREEMPTION

The defendants argue that in enacting the Beach Preservation Act, 7 *Del.C.* ch. 68, the Legislature vested exclusive authority over beach erosion control in the Department of Natural Resources and Environmental Control (the "DNREC"), thus precluding the town of South Bethany from passing the ordinance in question. In order to evaluate this argument, one must examine the relationship between the State Legislature and municipal corporations.

The power of the Legislature is limited only by the Constitution. *Opinion of the Justices,* Del.Supr., 295 A.2d 718 (1972). In turn, however, the Legislature may designate municipal corporations and delegate certain powers to them when it finds it convenient and proper to do so. A municipal corporation is but "a political subdivision of a state, created as a convenient agency for the existence of such state powers as may be entrusted to it.... [T]he state ... at its pleasure, may modify or withdraw all such power." *Trenton v. New Jersey,* 262 U.S. 182, 186, 43 S.Ct. 534, 536, 67 L.Ed. 937 (1923); *Boyer v. Delaware Liquor Comm'n,* Del.Gen.Sess., 173 A. 522 (1934); *Seversky v. Delaware Alcohol Bev. Con. Comm'n,* Del.Supr., 338 A.2d 119, 123 (1975). It is a necessary corollary to the relationship between the state, acting through its Legislature, and the municipal corporation that where a conflict exists between a state statute and a municipal ordinance, the statute must always prevail. *Mayor & Council of Wilmington v. Smentkowski,* Del.Supr., 198 A.2d 685 (1964); *Boyer v. Delaware Liquor Comm'n, supra; Taylor v. Smith,* Del. Ch., 115 A. 413 (1921); *Steinberg v. Frawley,* D.Del., 633 F.Supp. 548 (1986).

Ordinance 3–85, was enacted under the authority granted in § 24 of the Town Charter, as approved by the General Assembly. Section 24 provides that:

> "... The [Town] Commission shall have all other powers requisite to and appropriate for the government of the Town of South Bethany, its peace and order, its sanitation and beauty, and for the health, safety, convenience, comfort and well being of its population, and for the protection and preservation of public and private property."

Obviously, this provision grants the town a general police power.

The purpose of the challenged ordinance is set forth in section 2:

> "... to protect and preserve [public property] by reducing the impact of erosion and other damage by placing rip-rap along the beach ...".

**1250**

Assuming, for the purpose of this analysis, that Ordinance 3–85 is a valid exercise of the town's police power, the question is whether the provisions of the ordinance, enacted pursuant to the grant of power by the General Assembly to the Commissioners of South Bethany, conflict with other legislative enactments so as to preclude the application of the ordinance to the defendants.

The defendants contend that the ordinance is preempted by the operation of the Beach Preservation Act, 7 *Del.C.* ch. 68. Before that statute was enacted in 1972, the General Assembly had vested responsibility for the preservation and repair of beach erosion in the State Highway Department. 17 *Del.C.* §§ 142, 143 (1970 Cum. Supp., repealed). In that year, however, the General Assembly enacted the original version of the Beach Preservation Act, vesting in the DNREC the "[a]uthority to enhance, preserve and protect public and private beaches within the state". 7 *Del.C.* § 6803. This reflected an "acknowledgement by the General Assembly of the expertise of the DNREC and its superior ability to implement a coordinated regulatory program with regard to beaches within the State". *Atlantis I Condominium Ass'n. v. Bryson,* Del.Supr., 403 A.2d 711, 714 (1979). The current version of the Beach Preservation Act was enacted in 1984. 64 Del.Laws c. 361. It provides at § 6803:

"(a) Authority to enhance, preserve and protect public and private beaches within the State shall be vested solely in the Department of Natural Resources and Environmental Control.

"(b) The Department shall prevent and repair damages from erosion of public beaches. To this end, the Department shall, when it deems it necessary, provide, construct, reconstruct and maintain groins, jetties, banks, dikes, dunes, bulkheads, seawalls, breakwaters and other facilities or make any other repairs or take any other measures along or upon any public beach or shoreline area in this State. All structures, devices and facilities existing now or in the future which are devoted to the enhancement, preser-

vation and protection of beaches shall be under the sole jurisdiction, management and control of the Department."

With respect to prevention and repair of damage resulting from the erosion of private beaches, however, the Legislature set up a separate procedure:

"§ 6804. Privately owned beaches.

"The authority of the Department to prevent and repair damages from erosion shall extend to privately owned beaches whenever, in the judgment of the Governor, a dangerous condition constituting an emergency exists in a location specified by the Governor. Before taking any action with respect to a privately owned beach, the Department shall, whenever practicable, give reasonable notice to the owner thereof that a condition of potential emergency must be corrected, and wait a reasonable period of time for the owner to correct the matter. If the owner does not correct the matter, the Department shall do so. The owner shall be liable for all expenses incurred by the Department in correcting a condition of potential emergency."

South Bethany Ordinance 3–85 seeks to compel ocean-front landowners, under penalty of criminal prosecution, to erect a retaining wall or revetment to prevent or repair erosion damage to the beach contiguous to Ocean Drive and the resulting damage and danger to that public road and adjacent public utilities. The authority to enhance, preserve, and protect public and private beaches, however, is vested by the Legislature specifically in the DNREC. The DNREC regulations define beach enhancement as "the process of improving or increasing the ... storm protection value of a beach." Beach preservation is defined as "the process of maintaining the ... storm protection value of a beach" and beach protection is defined as "the process of preventing the decrease of the ... storm protection value of a beach." *Regulations Governing Beach Protection and the Use of Beaches,* Part I, Beach Preservation Act of 1972, Department of Natural Resources and Environmental Control, Division of Soil

and Water Conservation (effective December 27, 1983).

Clearly the revetment or sea-wall which the ordinance requires is the type of structure which § 6803(b) provides shall be under "the *sole jurisdiction*, management and control of the [DNREC]". *7 Del. C.* § 6803(b) (emphasis added). The DNREC has the sole authority to "provide, construct, reconstruct and maintain" such structures with respect to public beaches. *7 Del. C.* § 6803(b). With respect to *private beaches*, however, not even the DNREC could order the construction of the "rip-rap" that this ordinance requires unless "in the judgment of the Governor, a dangerous condition constituting an emergency exists in a location specified by the Governor."[1] *7 Del. C.* § 6804.

The General Assembly established a clear and explicit statutory scheme authorizing action to prevent and repair damage from erosion of the State's beaches. Exclusive authority for such action is vested in the DNREC. For public beaches, the DNREC, when it deems necessary, shall provide erosion mitigation structures of the type required by South Bethany Ordinance 3–85. With respect to private beaches, however, the authority to construct or order the construction of such structures exists only when the Governor has proclaimed that emergency conditions exist. As to the three named defendants, application of the ordinance contravenes *7 Del. C.* ch. 68 and is, thus, nugatory.[2] *Mayor & Council of Wilmington v. Smentkowski, supra,* 198 A.2d 685.

To argue, as the State apparently does, that Ordinance 3–85's purpose is to protect and preserve, not the beach, but the public road and utilities *on* the beach, is disingenuous. Authority to enhance, preserve and protect all beaches in the State is vested solely in the DNREC. *7 Del. C.* § 6804. The DNREC's own regulations define en-

hance, preserve and protect in terms of increasing or maintaining the storm protection value of the beach. A beach, for our purposes, is defined as "that area ... from the mean high waterline of the Atlantic Ocean ... landward 1000 feet and seaward 2500 feet...." *7 Del. C.* § 6802(1). The stated purpose of Ordinance 3–85 is "to preserve and protect [public property] by reducing the impact of erosion" through erection of the very type of structure placed under the DNREC's sole jurisdiction "along the beach east of Ocean Drive". South Bethany Ordinance 3–85, § 2. The DNREC's "statement of policy" with respect to the Beach Preservation Act discusses the threat that coastal erosion poses to the safety of adjacent "properties and public highways" and states that "it is declared, therefore, to be the policy of the State of Delaware that: (1) the preservation, protection and enhancement of the beaches of the State shall be directed to make the maximum contribution to the public benefit, and (2) the State, in the exercise of its sovereign power, acting through the [DNREC], shall control the development and use of the beaches of the State so as to effectuate an equitable balance between utilization, conservation and protection of this resource consistent with sound coastal engineering principles and practices." *Regulations Governing Beach Protection and the Use of Beaches, supra,* at viii.

Unquestionably, the type of beach stabilization structure called for by Ordinance 3–85 is within the purview of the Beach Preservation Act. Because the ordinance is in direct conflict with the provisions of that Act, it cannot be enforced against the defendants. The indictments shall be dismissed.

## III. CONSTITUTIONAL ISSUES

Since the ordinance conflicts with a State statute and is unenforceable, I do not need

---

1. Nothing in this opinion is meant to indicate that the DNREC could not, given the proper conditions, condemn an easement in the defendants' land and erect rip-rapping. *See* 7 *Del.C.* § 6810; *Piekarski v. State,* Del.Supr., 373 A.2d 209 (1977).

2. 7 *Del.C.* § 6811 provides:

"All laws or ordinances inconsistent with this chapter are hereby superseded to the extent of the inconsistency."

Because of the analysis I have employed in this matter, I need not decide whether § 6811 is to be applied prospectively.

to reach the constitutional questions raised by the defendants. But I think it is important to note that the validity of this ordinance is also questionable in light of the Fifth Amendment to the United States Constitution, which provides, in pertinent part, "nor shall private property be taken for public use, without just compensation," and which applies to this State and its political subdivisions through the operation of the Fourteenth Amendment. *Shellburne, Inc. v. New Castle Co.*, D. Del., 293 F.Supp. 237 (1968). The ordinance also appears to violate the injunction of Article 1, § 8 of the Delaware Constitution of 1897, which provides that no "man's property [shall] be taken or applied to public use without the consent of his representatives, and without compensation being made." The Federal and State Constitutions are held generally to provide the same quantum of protection against uncompensated takings of private property. *See New Castle Cty. Sch. Dist. v. State*, Del. Supr., 424 A.2d 15 (1980).

One cannot deny that the ordinance requires the use of private property for a public purpose.[3] The stated purpose is "to protect and preserve the public road" and the county sewer main and lateral. Ordinance 3–85, § 2. Since the time of Hugo Grotius and certainly since the time of Blackstone, it has been recognized that if private property is taken by the sovereign for a public purpose, compensation must be made:

> "So great moreover is the regard of the law for private property, that it will not authorize the least violation of it; no, not even for the general good of the whole community. If a new road, for instance, were to be made through the grounds of a private person, it might perhaps be extensively beneficial to the public; but the law permits no man, or set of men, to do this without consent of the owner of the land. In vain may it be urged, that the good of the individual ought to yield to that of the community; for it would be dangerous to allow any private man, or even any public tribunal, to be the judge of this common good, and to decide whether it be expedient or no. Besides, the public good is in nothing more essentially interested, than in the protection of every individual's private rights, as modeled by the municipal law. In this and similar cases the Legislature alone can, and indeed frequently does, interpose, and compel the individual to acquiesce. But how does it interpose and compel? Not by absolutely stripping the subject of his property in an arbitrary manner; but by giving him a full indemnification and equivalent for the injury thereby sustained. The public is now considered as an individual, treating with an individual for an exchange. All that the Legislature does is to oblige the owner to alienate his possessions for a reasonable price; and even this is an exertion of power, which the Legislature indulges in with caution, and which nothing but Legislature can perform."

Blackstone, 1 *Blackstone's Commentaries*, 100, 101 (Chitty ed., 1844); *see* J. Nowak *Constitutional Law* § 11.11 (3d ed., 1986).

■ It is this ancient and cherished principle that is embodied in both the United States and Delaware Constitutions. It applies as well to a taking by the State of an easement as to the taking of the entire fee. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *Delaware R. Co. v. Weeks*, D.Del., 293 Fed. 114 (1923). Had South Bethany, in an effort to protect public prop-

---

**3.** The prosecution does argue that the road and utilities sought to be protected by the ordinance are, in effect, private, since they are used principally by the defendants and the other property owners east of Ocean Drive. I find this argument wholly unpersuasive. The only evidence before me on this point is the ordinance itself, which describes Ocean Drive as "the public road", and a map or plat of the area, submitted by the state, which shows that most (but not all) of the parcels which require the use of Ocean Drive for access are those required by the ordinance to be rip-rapped. The same map, however, appears to show that Ocean Drive provides access to the rest of the town's streets and public access to the beach. It is worth noting that, had I found Ocean Drive and its utilities to be truly private property, the stated purpose of the ordinance would fail and it is doubtful that the ordinance would be a valid exercise of the police power.

erty from the action of the sea, entered defendants' property and erected a revetment, either seizing the fee to the underlying ground or simply an easement to build and maintain, it is perfectly clear that compensation would be due the property owner.

■ The State argues, however, that the ordinance works no such taking since, in a formal sense, no easement has been transferred to the town and there remains "unity of ownership in the land and the rip-rap." However, if government action effectively takes an easement for public purposes, the constitutional requirement of compensation arises, regardless of whether the government seeks to record an encumberance in the deed. *See Nollan v. California Coastal Comm'n, supra,* 483 U.S. at ——, 107 S.Ct. at 3145, 97 L.Ed.2d at 686 (governmental action resulting in a permanent physical occupation of property, by the government itself or by others, works a taking to the extent of the occupation) *citing Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (noise from airplane glide path projecting onto land is in the nature of an easement, requiring compensation under Fifth Amendment). Under the Delaware Constitution, Article 1, § 8 specifically requires compensation when the property is "taken or *applied to public use."* (Emphasis added).

■ The prosecution also argues that there is no taking in the constitutional sense because rather than the town entering onto the land, the property owner himself is forced under threat of criminal sanction to erect and maintain a revetment. This is a distinction without a difference. The Delaware Constitution prohibits uncompensated *applications* of private property to public use. Nor does the Fifth Amendment of the United States Constitution require actual entry onto the property before compensation is required. It is sufficient that there is a direct interference with or disturbance of property rights. *First English Evangelical Lutheran Church v. Los Angeles County,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Richmonds Elk Hall Ass'n v. Richmond Redevelopment Agency,* 9th Cir., 561 F.2d 1327 (1977). "When a restriction upon the use of property which causes it to depreciate in value is not a general regulation enacted on behalf of the public health, safety, morals and welfare, and the injury is not a mere incident of such regulation, but the restriction is intentionally placed upon certain land for the benefit of specific public improvements, the courts are still more ready to require compensation. Perhaps, if such classification assists at all, such a restriction may be more accurately called the taking of an easement by eminent domain. The mere fact that the enactment is in the form of a restriction does not prove that it is not a taking." *Nicholson on Eminent Domain,* § 1.42[9] (1985).

In these cases, it matters little whether the property right in effect taken by Ordinance 3–85 is in the nature of an easement, negative easement, profit à prendre profit à rendre or, as the prosecution itself suggests, quasi-easement. Nor does it matter whether the property right is appurtenant to the adjoining public roadway or in gross for the benefit of the town and its citizens. The town is, in the guise of a police-power regulation, attempting to take by coercion what it is unwilling to pay for. It is attempting to impose a servitude on the land, that a portion of it be set aside for public use, and that the landowner at his own expense build and maintain a device to protect public property on the adjoining parcel.

In *Nollan v. California Coastal Comm'n; supra,* the state sought a public easement across the front of plaintiff's ocean front property. It did not pay for the easement. Rather, it sought to have the landowner deed it the easement in return for issuance of a permit to build upon the lot. After finding that the taking of the easement did not serve the same purpose as would an outright denial of the permit, the Court held that "[t]he purpose [is] the obtaining of an easement to serve some valid government purpose, but without payment of compensation....[u]nless

the permit condition serves the same governmental purpose as the development ban, the [regulatory scheme] is not a valid regulation of land use but 'an out and out plan of extortion'." 483 U.S. at ——, 107 S.Ct. at 3148, 97 L.Ed. at 689. By the same reasoning, allowing the town to impose by criminal statute a servitude upon defendants' land for which it is unwilling to pay is similarly extortionate, and would reduce to nothing the compensation clauses of the United States Constitution and Delaware Constitution. If Ordinance 3–85 were permissible, what would stop the town from requiring a landowner to maintain a public road across his property, to maintain a sewer line, a garbage dump, etc.? All these requirements, of course, would work a taking, whether or not the town itself entered the property.

Finally, the state apparently argues that even assuming an easement has been devoted to public use, the value of the easement is negligible. This may be so. It is true that any benefit to the landowner may be set off against the loss engendered by the taking and, as the prosecution says, the maintenance of the road and utilities may have substantial value to the defendants. *See State v. Morris,* Del.Super., 93 A.2d 523 (1952). I do note, however, that the statute imposes an open-ended servitude on the property, the initial cost of which is estimated to be $10,000. At any rate, the fact that the loss to the defendants is minimal does not mean that a taking has not occurred. Given the permanent physical occupation of property mandated by the ordinance such a determination is made "without regard to whether the action

achieves an important public benefit or has only minimal economic impact on the owner." *Nollan v. California Coastal Comm'n, supra,* 483 U.S. at ——, 107 S.Ct. at 3145, 97 L.Ed. at 686. The determination of the amount of compensation due would be for the Court and the Commissioners in a condemnation proceeding, and is not before me here.

The indictments against the three named defendants are dismissed, for which an appropriate Order has been entered.

### ORDER

For the reasons set forth in an Opinion entered in these cases on this date, it is

ORDERED that the indictment against defendant Erwin E. Putman is dismissed.

### ORDER

For the reasons set forth in an Opinion entered in these cases on this date, it is

ORDERED that the indictment against defendant Patrick M. Palumbo is dismissed.

### ORDER

For the reasons set forth in an Opinion entered in these cases on this date, it is

ORDERED that the indictment against defendant Denis Alexatos is dismissed.