**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THEODORE WHITMORE STANLEY;
KEVIN BARBER, minor, by his father
and next friend Jesse Barber;
PATRICK BARBER, minor, by his
father and next friend Jesse Barber;
BRYAN BARBER, minor, by his father
and next friend Jesse Barber;
LURLEAN BESS MACK, minor, by
J. W. Mack, her grandfather and
next friend; BRIAN FRANKLIN, minor,
by his mother and next friend Joyce

Franklin; JAY FRANKLIN, minor, by
his mother and next friend Joyce
Franklin; UNITED STATES OF
AMERICA,
Plaintiffs,

v.

DARLINGTON COUNTY SCHOOL
DISTRICT, a public body corporate,
Defendant-Appellee,

v.

No. 95-1827

THE STATE OF SOUTH CAROLINA; THE DEPARTMENT OF EDUCATION FOR THE STATE OF SOUTH CAROLINA; THE BOARD OF EDUCATION FOR THE STATE OF SOUTH CAROLINA; WILLIAM P. BECKHAM, III, In Official Capacity as Member of the State Board of Education; SAMUEL M. GREER, In Official Capacity as Member of the State Board of Education; JOSEPH PEELER STABLER, Colonel, In Official Capacity as Member of the State Board of Education; CLEVELAND SELLARS, In Official Capacity as Member of the State Board of Education; AUSTIN FLOYD, In Official Capacity as Member of the State Board of Education; JULIAN B. WRIGHT, In Official Capacity as Member of the State Board of Education; BRENDA K. VERNON, In Official Capacity as Member of the State Board of Education;

2

EARL BOSTICK, SR., In Official
Capacity as Member of the State
Board of Education; MAXIE DUKE,
In Official Capacity as Member of
the State Board of Education;
LAURA M. FLEMING, In Official
Capacity as Member of the State
Board of Education; FRANK M.
HART, In Official Capacity as
Member of the State Board of
Education; BETH PINSON, In Official
Capacity as Member of the State
Board of Education; W. GREGORY
HORTON, In Official Capacity as
Member of the State Board of
Education; ROBERT W. OWEN, In
Official Capacity as Member of the
State Board of Education; RUBY
MATTHEWS, In Official Capacity as
Member of the State Board of
Education; CELIA GETTYS, In Official
Capacity as Member of the State
Board of Education; THOMAS E.
MCINVILLE, In Official Capacity as
Member of the State Board of
Education; DAVID M. BEASLEY, In
His Official Capacity as Governor
of the State of South Carolina;
BARBARA S. NIELSEN, In Her Official
Capacity as State Superintendent of
Education for the State of South
Carolina,
<u>Defendants-Appellants,</u>

and

3

DAVID M. BEASLEY, In His Official Capacity as Chairman of the State Budget and Control Board; SOUTH CAROLINA BUDGET AND CONTROL BOARD; GRADY L. PATTERSON, JR., In Official Capacity as Member of the State Budget and Control Board for the State of South Carolina; EARLE E. MORRIS, JR., In Official Capacity as Member of the State Budget and Control Board for the State of South Carolina; JAMES M. WADDELL, JR., In Official Capacity as Member of the State Budget and Control Board for the State of South Carolina; WILLIAM D. BOAN, In Official Capacity as Member of the State Budget and Control Board for the State of South Carolina, Defendants.

4

THEODORE WHITMORE STANLEY;
KEVIN BARBER, minor, by his father
and next friend Jesse Barber;
PATRICK BARBER, minor, by his
father and next friend Jesse Barber;
BRYAN BARBER, minor, by his father
and next friend Jesse Barber;
LURLEAN BESS MACK, minor, by
J. W. Mack, her grandfather and
next friend; BRIAN FRANKLIN, minor,
by his mother and next friend Joyce

Franklin; JAY FRANKLIN, minor, by
his mother and next friend Joyce
Franklin; UNITED STATES OF
AMERICA,
Plaintiffs,

v.

DARLINGTON COUNTY SCHOOL
DISTRICT, a public body corporate,
Defendant-Appellant,

v.

No. 95-1828

5

THE STATE OF SOUTH CAROLINA; THE DEPARTMENT OF EDUCATION FOR THE STATE OF SOUTH CAROLINA; THE BOARD OF EDUCATION FOR THE STATE OF SOUTH CAROLINA; WILLIAM P. BECKHAM, III, In Official Capacity as Member of the State Board of Education; SAMUEL M. GREER, In Official Capacity as Member of the State Board of Education; JOSEPH PEELER STABLER, Colonel, In Official Capacity as Member of the State Board of Education; CLEVELAND SELLARS, In Official Capacity as Member of the State Board of Education; AUSTIN FLOYD, In Official Capacity as Member of the State Board of Education; JULIAN B. WRIGHT, In Official Capacity as Member of the State Board of Education; BRENDA K. VERNON, In Official Capacity as Member of the State Board of Education;

6

EARL BOSTICK, SR., In Official Capacity as Member of the State Board of Education; MAXIE DUKE, In Official Capacity as Member of the State Board of Education; LAURA M. FLEMING, In Official Capacity as Member of the State Board of Education; FRANK M. HART, In Official Capacity as Member of the State Board of Education; BETH PINSON, In Official Capacity as Member of the State Board of Education; W. GREGORY HORTON, In Official Capacity as Member of the State Board of Education; ROBERT W. OWEN, In Official Capacity as Member of the State Board of Education; RUBY MATTHEWS, In Official Capacity as Member of the State Board of Education; CELIA GETTYS, In Official Capacity as Member of the State Board of Education; THOMAS E. MCINVILLE, In Official Capacity as Member of the State Board of Education; DAVID M. BEASLEY, In His Official Capacity as Governor of the State of South Carolina; BARBARA S. NIELSEN, In Her Official Capacity as State Superintendent of Education for the State of South Carolina,
Defendants-Appellees,

and

7

DAVID M. BEASLEY, In His Official
Capacity as Chairman of the State
Budget and Control Board; SOUTH
CAROLINA BUDGET AND CONTROL
BOARD; GRADY L. PATTERSON, JR., In
Official Capacity as Member of the
State Budget and Control Board for
the State of South Carolina;
EARLE E. MORRIS, JR., In Official
Capacity as Member of the State
Budget and Control Board for the
State of South Carolina; JAMES M.
WADDELL, JR., In Official Capacity
as Member of the State Budget and
Control Board for the State of
South Carolina; WILLIAM D. BOAN,
In Official Capacity as Member of
the State Budget and Control Board
for the State of South Carolina,
<u>Defendants.</u>

Appeals from the United States District Court
for the District of South Carolina, at Florence.
Cameron M. Currie, District Judge
(CA-62-7749-4-22)

Argued: December 6, 1995

Decided: May 28, 1996

Before WIDENER and NIEMEYER, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Reversed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Widener and Senior Judge Butzner joined.

_____

8

**COUNSEL**

**ARGUED:** James Emory Smith, Jr., Assistant Deputy Attorney General, Columbia, South Carolina, for Appellants. Alfred A. Lindseth, SUTHERLAND, ASBILL & BRENNAN, Atlanta, Georgia, for Appellee. **ON BRIEF:** Charles Molony Condon, Attorney General, Treva G. Ashworth, Deputy Attorney General, Columbia, South Carolina; George C. Leventis, General Counsel, STATE DEPARTMENT OF EDUCATION, Columbia, South Carolina, for Appellants. John M. Milling, Darlington, South Carolina, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

In 1962, seven black students filed this class action on behalf of all black students in Darlington County, South Carolina, against the Darlington County School District to compel desegregation of the county's public schools. The case was initially resolved in 1970 by the district court's entry of an order mandating implementation of a plan to desegregate the School District. The court retained jurisdiction to oversee the plan's implementation.

After the United States intervened on behalf of the plaintiffs in 1990, contending that the School District was violating the 1970 order, the School District sought to join the State of South Carolina as an additional defendant. The School District demanded that the State "be adjudged jointly and severally liable" with it for "any lingering effects of the former dual school system in Darlington County." The district court granted the School District's motion to join the State and, following trial, ordered the State to participate jointly with the School District in desegregating the schools and to "pay 15% of the capital costs and operating expenses of the desegregation remedies" entered in the case. On appeal, the State contends that it is not liable to the School District for any contribution, and on its cross-appeal, the School District contends that the State should contribute at least 50% to the desegregation costs.

9

Because neither the original plaintiffs nor the United States ever sued the State of South Carolina, we conclude that the only claim made against the State in this case is one for contribution by the School District. And because a federal court has no jurisdiction to adjudicate a contribution claim filed against a state by one of its political subdivisions, we reverse the district court's imposition of liability on the State of South Carolina to pay for any of the remedial costs.

I

The original plaintiffs filed this class action in May 1962 against the Darlington County School District and its trustees, the Darlington County Board of Education, and the superintendent of the School District (collectively, the "School District"), challenging the constitutionality of the School District's racially segregated educational system. In July 1964, the district court enjoined the School District from discriminating on the basis of race and ordered implementation of a plan. Following further litigation over the adequacy of the initial plan, the issue was resolved by entry of an order dated February 5, 1970, which was modified in 1973 (as modified, the "1970 Order"), finding the county's dual system in violation of the Constitution and ordering implementation of a revised desegregation plan. Under the 1970 Order, the School District was required to reassign students and faculty, to make changes in curriculum and vocational programs, to pair schools, and to upgrade facilities and services. The district court retained jurisdiction to oversee the plan's implementation.

In 1983, the plaintiffs challenged the adequacy of the School District's implementation efforts, but withdrew their challenge in 1985 when they concluded that they could not prove noncompliance. In 1990, however, the United States moved to intervene as an additional plaintiff to challenge the School District's compliance with the 1970 Order, and the district court granted that motion in August 1991. The United States alleged in its "complaint-in-intervention" that "[n]ineteen years after implementation of the 1970 Court Order, the schools in the [School District] remain segregated and racially identifiable." It alleged that the School District was pursuing policies and practices designed to frustrate implementation of the 1970 Order, including: assigning students to schools and hiring principals and faculty in a manner that perpetuated segregation, failing to enforce stu-

10

dents' attendance at schools in their zones of residence, refusing to pair schools to promote integration, offering an inferior curriculum and school facility at the predominantly black Mayo High School, and failing to implement a majority-to-minority student transfer program. The United States requested an injunction prohibiting racial discrimination in the operation of the Darlington County public schools and ordering implementation of a plan that would eliminate the vestiges of segregation in the county school system.

Eighteen months after the district court permitted the United States to intervene against the School District, the School District filed a motion under Federal Rule of Civil Procedure 19(a) to join the State of South Carolina and its agencies and personnel involved in public education (collectively, the "State") as additional defendants. It also sought to file a "cross-claim" against the State. In its motion to join the State, the School District contended that without the State's joinder, "complete relief cannot be accorded among those already parties to this action." And it argued that the State,"which created the dual school system in the first place, has the same affirmative obligation as the Local District to eliminate any remaining vestiges."

The United States opposed the School District's motion on the ground that the School District "has failed to provide a single example of how the State has impeded the District's compliance with this Court's order and federal law since 1970." The plaintiffs expressed both uncertainty about the State's responsibility for the School District's failure to comply with the 1970 Order and concern that joining the State would delay resolution of the case.

Notwithstanding the plaintiffs' reservations, the district court granted the School District's motion to join the State as a co-defendant and permitted the School District to file a "cross-claim" against the State. The court explained, "[I]f we are required to impose a remedy to correct the alleged racial discrimination, it is necessary to have all the potential players before this court." While the School District served its "cross-claim" on the State, neither the original plaintiffs nor the United States amended its complaint to name the State as a defendant or to demand relief from the State.

In May 1994, the original plaintiffs, the United States, and the School District reached agreement on the terms of a consent order,

11

which the district court approved and entered (the "1994 Consent Order"), to implement the 1970 Order and to desegregate the Darlington County school system. In the 1994 Consent Order, the School District stipulated that it had "not fully complied with the [1970] desegregation order and federal law in this case, and that vestiges of the prior dual system remain in the Darlington County School District." The order requires the School District to alter its student assignment practices; to assign principals on a nondiscriminatory basis; to allocate faculty and staff to achieve a racial composition at each school within ten percentage points of the district-wide average; to provide public transportation on a nondiscriminatory basis; to modify the curriculum to enhance the transition to desegregated schools; and to offer extracurricular activities on a nondiscriminatory basis. The order also includes a timetable for implementation and imposes reporting requirements. The State did not participate in the settlement negotiations and is not a party to the 1994 Consent Order.

The School District's case against the State proceeded to trial, after which the district court concluded, in findings of fact, conclusions of law, and an order dated March 1, 1995, that "the State has done little or nothing . . . to eliminate the vestiges of the dual school system created and perpetuated by them, despite an affirmative duty to do so." The court detailed how, during the 1950's and 1960's, the State created regulatory mechanisms for constructing a dual school system and resisted implementing changes required by Brown v. Board of Education, 347 U.S. 483 (1954). The court observed that although the State's resistance to school desegregation "had largely ceased by the early 1970's," State officials "did little after 1970 to eliminate the remaining vestiges of the former dual school system." The State "never promoted desegregation with anything approaching the degree of energy and involvement it brought to the mission of preserving segregation." Accordingly, the district court concluded that "the State must participate with the [School] District in remedying the vestiges of segregation."

The district court's March 1, 1995, order directed the State to "participate jointly with the District in the desegregation remedies set forth in the [1994] Consent Order and this Order," to "provide all transportation services and facilities necessary to accomplish the desegregation measures in the [1994] Consent Order and this Order,"

12

and to pay "15% of the capital costs and operating expenses of the desegregation remedies contained in the [1994] Consent Order and this Order." The order also required that the State Department of Education make available the services of its consultants and staff to help the School District implement a magnet program at Mayo High School.

On appeal, the State challenges the district court's order insofar as it imposes liability on the State for 15% of the costs of the relief granted to the plaintiffs on their claims against the School District. And on its cross-appeal, the School District contends that the district court erred in failing to require the State to bear a greater percentage of the desegregation costs.

II

The State contends that the School District lacks standing to sue the State because the School District is a political subdivision of the State and that the State's allocation of governmental expenses is an internal issue of "governmental structuring and money." Moreover, the State argues, the School District cannot represent students who are already parties to this action. The State argues further that because the School District has had full power and authority to desegregate the Darlington County public schools since at least 1970, any vestiges of segregation are attributable solely to the School District's failure to take remedial actions. Finally, the State advances an Eleventh Amendment immunity defense on the ground that the School District "essentially seeks damages."

The School District, on the other hand, contends that since at least 1970 the State has had an affirmative duty to desegregate the Darlington County public schools and that the State could not discharge that duty by merely abandoning its prior discrimination and delegating to a subordinate entity the powers necessary to achieve desegregation. While the School District acknowledges that the 1970 Order imposed upon it complete responsibility for desegregating the Darlington County public schools, it argues that the State's failure to take an active role in dismantling the dual system left the State's continuing obligations unfulfilled. The School District maintains further that under Milliken v. Bradley, 433 U.S. 267 (1977), the district court had

13

the equitable power to apportion the costs of desegregation between it and the State as joint tortfeasors. Indeed, the School District contends in its cross-appeal that rather than the 15% that the district court assigned to the State in its March 1, 1995, order, the State should bear at least 50% of the costs of desegregating the Darlington County public schools. In response to the State's Eleventh Amendment defense, the School District insists that it seeks only "prospective injunctive relief."

At the outset of our discussion of the issues presented by this appeal, it is important to recognize that illegal segregation was for many years the policy of both the State of South Carolina and the Darlington County School District. All parties to this litigation acknowledge that fact.

We also recognize that both the State and the School District could have been sued to remedy the constitutional violations. Because the Fourteenth Amendment imposes direct responsibility on a state to ensure equal protection of the laws "to any person within its jurisdiction," a state's delegation to a political subdivision of the power necessary to remedy the constitutional violation does not absolve the state of its responsibility to ensure that the violation is remedied. Even if a state gives its local school districts the power and means to remedy segregation, it can still be sued by the students in those districts for its failure to take steps to dismantle a dual educational system that it created. See Missouri v. Jenkins, 495 U.S. 33, 37 (1990); Milliken, 433 U.S. at 288-91. Interested plaintiffs may sue both a state and its local school districts for violations of the Fourteenth Amendment, and a federal district court, presented with such a case, has the equitable power to apportion between the state and the local school districts liability for remedying those violations. See Milliken, 433 U.S. at 289 (decree to share future costs of desegregation fits within "prospective-compliance exception" to Eleventh Amendment); see also Missouri, 495 U.S. at 54 (§ 1983 authorizes courts to apportion costs of complying with desegregation remedy among state and local tortfeasors).

Thus, if after joining the State as an additional defendant, the original plaintiffs or the United States had asserted claims against the State, established precedent would have permitted the School District to benefit from the possibility that the district court would apportion

14

the costs of future compliance between the State and the School District. And the State's Eleventh Amendment defense, its delegation defense, and its argument that it was not the principal tortfeasor could properly have been rejected under Milliken and its progeny.

But neither the original plaintiffs nor the United States asserted claims against the State, and therefore this case does not fall under the Milliken line of cases. When the original plaintiffs filed suit in 1962, they named only the School District as defendant; they did not sue the State. Moreover, the 1970 Order, which required implementation of a specific plan to end segregation in Darlington County, was not directed at the State. The Order imposed obligations only on the School District. And over the years following entry of the 1970 Order, there was never any indication that the School District could not comply with that order. In fact, the district court stated in its 1995 Order that it found no reason why the School District did not satisfy the 1970 Order.

And when the United States intervened in 1990, it did so, not to challenge the adequacy of the 1970 Order--an order which the original plaintiffs, the School District, and the district court had already deemed capable of affording complete relief--but solely to redress the School District's noncompliance with that order. Therefore, the United States did not name the State as an additional defendant.

The plaintiffs' subsequent actions confirm that their decision not to sue the State was not inadvertent. When the School District filed its motion to join the State as an additional defendant, the original plaintiffs and the United States opposed the motion. The United States argued, "[t]he [School] District has failed to provide a single example of how the State has impeded the district's compliance with the court's order and federal law since 1970." Moreover, after the district court granted the School District's motion to join the State as a defendant, neither the original plaintiffs nor the United States amended their complaints to name the State as a defendant. Instead, they settled their claims with a Consent Order, obtaining complete redress from the School District only. Furthermore, the plaintiffs did not participate in the trial of the School District's "cross-claim" against the State. They expressed no concern as to how the costs of desegregation required by the 1994 Consent Order would be allocated between the

15

State and the School District. Finally, when the State and the School District noticed their appeals to this court, the United States moved to be dismissed from the proceedings. In its motion, the United States characterized these appeals as focusing solely on the allocation between the State and the School District of the responsibility for desegregation and argued, "Since the only issue now raised by the school district's cross-appeal concerns its cross-claim against the State, and since the appeal thus involves no issues arising from the United States' litigation against the school district, the United States should be dismissed as a party to the appeal." We granted the request and dismissed both the original plaintiffs and the United States from these appeals.

Recognizing that the plaintiffs did not assert claims against the State and seeking to compel the State to participate in the costs of remedying segregation in Darlington County, the School District filed a motion to add the State as defendant under Federal Rule of Civil Procedure 19(a) and to file its "cross-claim" against the State. In its motion, the School District expressed its purpose of forcing the State to become a defendant directly liable on the plaintiff's claims and stated that it was not seeking contribution by way of a third-party claim against the State.

The federal rules, however, do not authorize a defendant to compel an unwilling plaintiff to assert a claim against a second defendant. See Muir v. United States Steel Corp., 41 F.R.D. 428, 430 (E.D. Pa. 1967). The most that the defendant can do is argue that complete relief cannot be afforded without joinder of the second defendant. See Fed. R. Civ. P. 19(a). If the court agrees, the plaintiff is given the choice of amending its complaint to name the "indispensable" second defendant or suffering dismissal of the complaint. See Fed. R. Civ. P. 19(b); Window Glass Cutters League v. American St. Gobain Corp., 428 F.2d 353 (3d Cir. 1970) (upholding dismissal where plaintiff refused to join indispensable party); Muir, id.

The School District contends that the district court found that the State was an indispensable party by granting the School District's Rule 19(a) motion. If, however, the district court did find that the State was an indispensable party and the plaintiffs refused to amend their complaints to add the State, the district court would have been

16

forced to dismiss the case. See Fed. R. Civ. P. 19(b). But the district court did not view the case that way.

When the district court granted the School District's motion under Federal Rule of Civil Procedure 19(a), it did so for two reasons. First, it granted the motion to cover the possibility that it would need the State as a party to effect a remedy beyond that already granted by the 1970 Order. The court stated, "[I]f we are required to impose a remedy to correct the alleged racial discrimination, it is necessary to have all the potential players before this court." The court could not, however, make the finding that complete relief could not be effected "among those already parties," see Fed. R. Civ. P. 19(a)(1), because the plaintiffs had already received complete relief in the 1970 Order to which the State was not a party. Second, the court granted the Rule 19(a) motion on the erroneous belief that the need to afford relief to the School District on its "cross-claim" against the State supported Rule 19 joinder:

> The cross-claim will seek an order that, in the event the [School District] is adjudged liable and ordered to remedy the alleged racial discrimination, this court should adjudge the State jointly and severally liable thereby requiring the State to participate in whatever action is necessary to remedy the discrimination.

\* \* \*

> This court is unable at this time to determine if the claims against the State have merit; however, other states in similar circumstances to South Carolina have been defendants in recent school desegregation lawsuits.

Thus, despite the district court's grant of the School District's self-styled Rule 19(a) motion, it apparently treated the School District's motion as a Rule 20 motion for permissive joinder or a request for leave to file a third-party complaint against the State under Rule 14.

The district judge who later tried the case likewise interpreted the Rule 19(a) order entered in this case as one allowing the School Dis-

17

trict to assert a third-party claim for contribution. She stated at a hearing in April 1994:

> Now, there are a lot of references throughout the case to this cross-claim. And I'll just tell you that I don't believe it's a cross-claim. I believe it's a third-party complaint. But it's called a cross-claim in here.

> As I understand it, the State defendants were not defendants initially. They were only brought in by virtue of a claim over by a defendant making that a third-party claim rather than a cross-claim.

From all of these circumstances, we conclude that, in granting the School District's motion to join the State, the district court simply considered it prudent, but not necessary, to join the State so that it might fashion appropriate equitable relief. Indeed, the court never indicated that it expected the plaintiffs to amend their complaints, nor compelled the plaintiffs to assert claims against the State. Certainly, the School District could not require the unwilling plaintiffs to sue the State. Cf. Aiken County v. BSP Div. of Envirotech Corp., 866 F.2d 661, 668-69 (4th Cir. 1989) (district court abused its discretion in amending plaintiff's complaint sua sponte to include direct claim against third-party defendant when plaintiff never asserted such claim). We also conclude that the district court intended to facilitate the School District's effort to assert a claim of its own against the State.

Because, in the end, the plaintiffs never stated a claim against the State, the School District's "cross-claim" can only be interpreted as a traditional claim for contribution. And although the School District denominated its pleading against the State a "cross-claim," it is more accurately denominated a third-party claim. Compare Fed. R. Civ. P. 13(g) ("Cross-Claim Against Co Party") and Fed. R. Civ. P. 13(h) ("Joinder of Additional Parties") with Fed. R. Civ. P. 14 ("Third-Party Practice"); see also 6 Wright, Miller, Kane, Federal Practice and Procedure §§ 1434-35 (2d ed. 1990).

In an effort to overcome these procedural difficulties and to impose on the State direct liability to the individual plaintiffs, the School Dis-

18

trict purported to sue the State, not only on its own behalf, but also "on behalf of the black and white children residing in the Local District." But the School District never explained how it could represent a class, the victimized portion of which was already litigating against the School District in the same action. The School District would have been required to promote the very claim it was resisting. Such a conflict is disqualifying. Cf. Bradley v. School Bd., 338 F. Supp. 67, 230 (E.D. Va. 1972) ("Obviously in some cases school boards resist and in others they press for relief by means of desegregation. In the latter case it is much the preferable course to preserve the adversary context . . . by granting a school board standing, if no plaintiff, to sue on behalf of its students"), rev'd on other grounds, 462 F.2d 1058 (4th Cir. 1972), aff'd sub nom. School Bd. v. State Bd. of Educ., 412 U.S. 92 (1973).[1] The district court's conclusion that the School District was entitled to sue the State "on behalf of the children in the district" does not compel a different result, because the district court's conclusion is consistent with its characterization of the School District's "cross-claim" as a third-party claim for contribution, a claim on which the School District shares the interests of its constituent taxpayers.

In sum, had the original plaintiffs or the United States prosecuted a claim against the State, the district court could have exercised its equitable power to apportion its prospective remedy between the School District and the State. Because neither the plaintiffs nor the United States pursued any claim against the State, however, the district court could not apportion the costs of its remedy between the School District and the State. Any apportionment of costs in this case can be attributed only to the School District's "cross-claim" against the State for contribution, to which we now turn.

_____

**1** For the same reason that the School District may not represent its school children for substantive constitutional remedies, it may not represent them for alleged unlawful discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 et seq.

19

III

The School District bases its contribution claim against the State on the contention that both the State and the School District were constitutional tortfeasors. In its prayer for relief, the School District requested that the "State Defendants jointly and severally be adjudged liable to remedy any lingering effects of the former dual school system in Darlington County which the Court may find in accordance with the requirements of the Constitution and the laws of the United States."

The School District's contribution claim raises significant state law issues, including: whether a state has a duty of contribution to a political subdivision that it created and can abolish; whether liability for contribution may be imposed on a passive tortfeasor where the principal cause of injury is the active conduct of the party seeking contribution; whether a political subdivision of a state can sue the state against its will; and whether any court can allocate legislatively appropriated funds among a state's departments and political subdivisions. As complex and intriguing as these questions may be, we can find no authority that empowers a federal court to resolve them.

While the Fourteenth Amendment empowers federal courts to address a state's equal protection violations, it does not provide any basis for a contribution claim by a political subdivision against the state that created it. It would be an unfathomable intrusion into a state's affairs--and a violation of the most basic notions of federalism --for a federal court to determine the allocation of a state's financial resources. The legislative debate over such allocation is uniquely an exercise of state sovereignty.

A long recognized attribute of state sovereignty is the state's power to create political subdivisions as a convenience in exercising its power. And just as a state may create political subdivisions, it may also abolish them or, more drastically, determine the extent of their financing with public tax dollars.

> The State, therefore, at its pleasure may modify or withdraw
> all [of a municipality's] powers, may take without compen-
> sation such property, hold it itself, or vest it in other agen-

20

cies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme . . . .

City of Trenton v. New Jersey, 262 U.S. 182, 186 (1923) (quoting Hunter v. City of Pittsburgh, 207 U.S. 161, 178-79 (1907)). A state's sovereign powers to create, abolish, and fund political subdivisions are not constrained by the Fourteenth Amendment; the political subdivision is not a "person" protected by the Amendment. As the Supreme Court explained in City of Trenton, "The power of the State, unrestrained by the . . . Fourteenth Amendment, over the rights and property of [political subdivisions] held and used for `governmental purposes' cannot be questioned." Id. at 188; see also Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 638 (1819); Harris v. Angelina County, 31 F.3d 331, 340 (5th Cir. 1994) ("[W]e can think of few greater intrusions on state sovereignty than requiring a state to respond, in federal court, to a claim for contribution brought by one of its own counties"); Kelley v. Metropolitan County Bd. of Educ., 836 F.2d 986, 998 (6th Cir. 1987) ("Federal courts may not be called upon, in the first instance, `to adjudicate what is essentially an internal dispute between two local governmental entities, one of which is asserting unconstitutional conduct on the part of the other'" (quoting South Macomb Disposal Auth. v. Township of Washington, 790 F.2d 500, 507 n.1 (6th Cir. 1986) (Engel, J., concurring)), cert. denied, 487 U.S. 1206 (1988).

The plaintiffs' interest in this case was to remedy the unconstitutional, racially discriminatory policies of the State and its political subdivisions in creating and maintaining a dual system of public education in Darlington County. To that end, they could have sued the State and any responsible agencies of the State. And a federal court, in the exercise of its equitable powers, could have remedied the violations by allocating among the defendants in any proportion the prospective costs of implementing its injunctive decree. But when interested persons and the federal government chose to sue only the School District and, through that process, obtained complete relief, the plaintiffs' interest in this case was satisfied. Thereafter, no federal

21

court had jurisdiction to involve itself further in the internal affairs of state government and apportion the costs of providing the ordered relief among the state's departments and political subdivisions.**2** Cf. Hayward v. Clay, 573 F.2d 187, 190 (4th Cir.), cert. denied, 439 U.S. 959 (1978) (while state's power over its municipal corporations may be nearly absolute, federal courts may adjudicate claim that state's exercise of power violates the Equal Protection Clause).

Accordingly, insofar as it imposes liability on the State of South Carolina to pay for part of the desegregation remedies imposed by the district court, the judgment of the district court is reversed. Otherwise, we do not disturb the judgment.

IT IS SO ORDERED.

_____

**2** While this rationale might not, per se, preclude a political subdivision from suing a state under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, for its discriminatory allocation of federal funds, we hold that the statute in any event provides no such authorization. Nowhere in Title VI do we find any indication of a congressional intent to authorize a political subdivision of a state to sue the state itself. See United States v. Alabama, 791 F.2d 1450, 1456 (11th Cir. 1986), cert. denied, 479 U.S. 1085 (1987). But see Hudson Valley Freedom Theater, Inc. v. Heimbach, 671 F.2d 702 (2d Cir.) (nonprofit corporation may sue political subdivision of state under Title VI), cert. denied, 459 U.S. 857 (1982).

22